| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF NEW YORK<br>-------------------------------------------------------------x<br>In re:<br><br>KEEN EQUITIES, LLC,<br><br>                        Debtor.<br>-------------------------------------------------------------x | Hearing Date and Time:<br>September 10, 2014 at 10:30 a.m.<br><br>Chapter 11<br><br>Case No. 13-46782 (NHL) |

### DEBTOR'S OPPOSITION TO THE MOTION OF THE GREENE FAMILY TO VACATE THE AUTOMATIC STAY

**TO THE HONORABLE NANCY HERSHEY LORD,
UNITED STATES BANKRUPTCY JUDGE:**

The Debtor herein, Keen Equities, LLC (the "Debtor"), as and for its opposition to the motion of the Greene Family as mortgagee, to vacate the automatic stay pursuant to Section 362 of the Bankruptcy Code, represents and shows this Court as follows:

### PRELIMINARY STATEMENT

1.   Having failed to challenge two prior motions to extend the Debtor's exclusivity[1], the Greene Family is now suddenly moving to lift the automatic stay without a clear or specific reason, despite receiving adequate protection payments of $31,000 each and every month since April 2014[2].

2.   Indeed, except for highlighting the obvious – i.e. references that we are dealing with a real estate bankruptcy, and the Debtor's intended development plans will take a year or so to obtain preliminary approval of an Environmental Impact Statement, the motion

---

[1] The Debtor's pending exclusivity motion (ECF No. 41) seeks an extension through October 10, 2014.

[2] The adequate payments actually began in January, albeit at the rate of $21,258.50 representing the non-default rate of interest of 6.5% times the unpaid principal balance of $3,924,645.93, divided by 12. Pursuant to a Stipulation and Order entered on March 18, 2014, the monthly amount was increased to $31,000, which should continue at the same level despite the Greene Family's request for a higher amount.

1

otherwise ignores the cause requirement under § 362(d). Instead, the Greene Family unfairly criticizes the Debtor because various applications to retain real estate professionals are still under review by the Office of the U.S. Trustee, and wrongly speculates that post-petition operations are being funded by unapproved loans, when, in fact, all funds have been contributed as capital.

3. The Debtor has run a proper Chapter 11 case and has attempted to work constructively with the U.S. Trustee. Not only has the Debtor addressed all of its administrative responsibilities, and consistently paid debt service and taxes, it is also pursuing a viable development plan based strong financial commitments from its investors. This effort has laid the ground work for a successful reorganization, making it specious for the Greene Family to now argue that this case was originally filed in bad faith.

4. To be sure, the Debtor is attempting to navigate difficult waters and used Chapter 11 to stay a foreclosure action. However, the Debtor has made significant progress on multiple fronts, including the filing of a formal Subdivision, Site Plan and Conditional Use Application (the "Site Plan Application") with the Village of South Blooming Grove Planning Commission on July 21, 2014. Although this is an important initial step, the Debtor should not be forced to file a plan of reorganization prematurely so long as the process moves forward and debt service is made.

5. As they say in bankruptcy, the Debtor has "put its money where its mouth is" by funding adequate protection payments, taxes, and insurance, as well as raising capital to pay the costs of relaunching the Project. Given the access to capital, the Debtor's prospects for a successful resolution remain bright, and the motion should be denied.

6. To better understand the progress which has been made to date, a review of certain background facts is in order. The Debtor is also providing the Court with a realistic

timeline to obtain preliminary approval of an Environmental Impact Statement. This is the critical event when it can be reasonably assured that the project will be completed.

## BACKGROUND

7. The Debtor originally filed a voluntary petition under Chapter 11 of the Bankruptcy Code on November 12, 2013.

8. The Debtor is the owner of approximately 860 acres of largely vacant land (the "Lake Anne Property"), situated close to the Hassidic community of Kiryas Joel, in Monroe, New York. The Lake Anne Property was purchased in 2006 with the goal of building residential homes to meet the growing needs of the Kiryas Joel community (the "Project").

9. The Lake Anne Property is currently subject to a purchase money mortgage held by the Greene Family, with a current principal balance of $3,924,645.23, plus accrued interest and other charges (the "Mortgage").

10. The Greene Family alleges that the Mortgage debt has increased to nearly $7,000,000 based on a default interest rate of 18% per annum following the accrual of arrears in September, 2010. Default interest remains subject to challenge since the Chapter 11 case was filed relatively early in the foreclosure process, well before a judgment of foreclosure was entered, and before any amounts due under the Mortgage were confirmed by the State Court.

11. For purposes of bankruptcy, the Debtor acknowledges that a principal balance of $3,924,645.93 remains due and owing, plus accrued pre-petition interest at the non-default rate of 6.5%, or approximately $816,326.35, for a total debt of approximately $4,740,972.28 plus reimbursement of actual protective advances.

12. As repeatedly stated, the Debtor filed the Chapter 11 petition with the goal of attempting to work more constructively with local village officials in South Blooming Grove.

Since the Chapter 11 filing, the Debtor has pursued a conventional development plan under the guidance of experienced professionals. In this regard, the Debtor previously submitted proposed applications to the U.S. Trustee for review to retain a real estate development consultant (Simon Gelb of CPC) and special real estate counsel (Steven Barshov, Esq.). Copies of these proposed retention applications are collectively annexed hereto as Exhibit "A".

13. The retention applications are still being discussed with the U.S. Trustee and changes will be made to the documents. The Debtor however anticipates that the issues raised by the U.S. Trustee regarding the Applications will be resolved prior to the return date of this motion.

14. Pending entry of an order, CPC has already undertaken important steps to relaunch the Project, including formal meetings before the Community Design Review Committee (CDRC) and the preparation of Site Plan Application, a complete copy of which is annexed hereto as Exhibit "B".

15. The Debtor has utilized its existing capital reserves to fund the Project and recently filed a motion to approve a protocol for the funding of new capital contributions. This motion was filed before the Greene Family moved to vacate the automatic stay. The financing motion will provide the Debtor with the necessary liquidity to move forward, and answers many questions regarding the Debtor's financial resources.

16. The role of CPC is worthy of special attention. As noted in its retention application, Simon Gelb of CPC is well respected in the local area, with wide experience in development projects of this type. Thus, the Debtor firmly believes that Mr. Gelb's participation will promote better relations with Village officials. The proposed retention contemplates that CPC will hire the various engineering and service firms to perform the necessary studies for the

Environmental Impact Statement. A list of the firms which CPC has engaged and the scope of their services is attached hereto as <u>Exhibit "C"</u>.

17. The coordination and hiring of capable firms is a critical aspect of CPC's work. The firms work directly for CPC, and the Debtor reimburses CPC for the costs of the studies or pays the bills directly upon the request of CPC.

18. Upon information and belief, this arrangement is acceptable to the U.S. Trustee, whose inquiries focus primarily on the need for CPC to obtain Bankruptcy Court approval before the payment of compensation even under a contingent success fee arrangement.

19. The current timeline of critical events in the process needed to obtain preliminary approval is as follows:

- Site Plan Application filed: July 2014.

- Initial review of Application by Planning Board; issuance by Planning Board of notice of intent to serve as lead agency for environmental review process: August 2014.

- Development of scope of Environmental Impact Statement: September 2014.

- Complete preparation of the Draft Environmental Impact Statement (DEIS): approx. December 2014 or January 2015

- Public hearing on DEIS: February 2015. Prepare responses to comments generated at public hearing; review by Planning Board: April 2015.

- Complete Final Environmental Impact Statement: June 2015

- Prepare Findings Statement as required by SEQRA: July 2015

- Preliminary site plan approval: September 2015

## ARGUMENT

### The Chapter 11 petition was filed in good faith and there is no basis to lift the automatic stay

20.  The Greene Family's argument that the petition was filed in bad faith lacks merit and ignores that the Debtor is pursuing a clear path towards reorganization. Merely because the road is long, or could have unexpected twists and turns, does not undermine the Debtor's good faith.

21.  As this Court recognized in In re Consolidated Distributors, Inc., 2013 WL 3929851 *7 (Bankr. E.D.N.Y. 2013), the prevailing test for good faith/bad faith, as developed by the Second Circuit in In re Cohoes Industrial Terminal Inc., 931 F.2d 222 (2d Cir. 1991) and In re C-TC 9th Avenue Partnership, 113 F.3d 1304 (2d Cir. 1997), combines an analysis of objective futility and subjective bad faith to determine whether, at the time of the filing, the Debtor intended to reorganize and whether a reasonable probability exists that the Debtor will emerge from bankruptcy. See also, In re 68 West 127th Street LLC, 285 BR. 838, 846 (Bankr. S.D.N.Y. 2002) [Bad faith exists if it is clear on the filing date there is no reasonable likelihood that the debtor intended to reorganize and the debtor has no probability to emerge from bankruptcy]; In re Kingston Square Assocs., 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997) ["[T]he standard in this Circuit is that a bankruptcy petition will be dismissed if *both* objective futility and subjective bad faith in filing the petition are found." (emphasis in original)]; In re RCM Global Long Term Corp. Appreciation Fund, 200 B.R. 514, 520 (Bankr. S.D.N.Y. 1996) ["… a Court should reach the conclusion that there is no demonstrable ability to reorganize only upon the strongest evidentiary showing."]. Accord: In re Carolin, 886 F.2d 693 (4th Cir. 1989); In re Sylmar Plaza, L.P., 314 F.3d 1070 (9th Cir. 2002).

22. Under any reasonable interpretation, the Debtor is pursuing a feasible development plan that has a reasonable chance of success. While the Greene Family may have certain questions regarding scope of the development (which the Debtor is more than happy to answer), it cannot be legitimately debated that the Debtor's goal is to achieve a successful plan of reorganization. The provisions of Chapter 11 are designed to give the Debtor a fair opportunity to accomplish this goal.

23. As noted by the Court in In re Clinton Centrifuge, Inc., 72 B.R. 900, 905 (Bankr. E.D.Pa. 1987):

> In engrafting the good faith requirement into the Code, courts must be careful not to upset the delicate balance of interests fashioned by Congress under chapter 11. Moreover, to the extent that the concept of good faith exists independent of other Code provisions (such as adequate protection), courts must be vigilant to apply this concept in ways consistent with the legislative policy decisions embodied in these other [Code] enactments. Thus, in evaluating a debtor's good faith, the court's only inquiry is to determine whether the debtor seeks to abuse the bankruptcy law by employing it for a purpose for which it was not intended. When a debtor is motivated by plausible legitimate reorganization (or liquidation) purposes and not solely or predominantly by the mere desire to prevent foreclosure or hinder creditors, bad faith is not present in a chapter 11 case.

24. That the Debtor is a single asset real estate company, with relatively little unsecured debt, is not atypical, and does not constitute a basis to lift the automatic stay. Single asset real estate cases are clearly permitted and have separate requirements under 11 U.S.C. § 362(d)(3), which the Debtor has met. Moreover, this Court has recognized that the C-TC 9th Avenue factors should not be "mechanically" applied. In re Consolidated Distributors, Inc., supra at *7. See also In re 68 West 127 Street, LLC, supra at 844. Thus, the item-by-item analysis offered by the Greene Family is not dispositive, and fails to address that the Debtor is

sufficiently capitalized to complete the Project even if the Property does not generate steady income at this point.

25. In short, the Greene family's impatience or frustration is not a proper basis to lift the automatic stay. As the Second Circuit explained in Cohoes:

> Filing a bankruptcy petition with the intent to frustrate creditors does not by itself establish an absence of intent to seek rehabilitation. Indeed, because a major purpose behind our bankruptcy laws is to afford a debtor some breathing room from creditors, it is almost inevitable that creditors will, in some sense be "frustrated" when their debtor files a bankruptcy petition. In reality, there is a considerable gap between delaying creditors, on the eve of foreclosure and the concept of abuse of judicial purpose.

In re Cohoes Industrial Terminal Inc., 931 F.2d at 238. (citations omitted).

26. From the start, the Debtor acknowledged that it had its work cut out for itself. However, the Debtor has tackled the challenges head-on, while compiling the financial resources and know-how to deal positively with Village officials. The Greene Family can rest assured that once the Debtor is close to obtaining preliminary approval of the Environmental Impact Statement, it will make a solid and credible proposal to deal with the Mortgage. Practically speaking, however, it will be difficult to raise $5 million or more to address the Mortgage before the Environmental Impact Statement is approved. The Debtor is certainly willing to negotiate potential parameters with the Greene family in ordinance of preliminary approval, but the actual funding of a plan will not likely be available without preliminary approval.

27. Nevertheless, the fact that the Debtor's investors have made funding commitments of close to $2.0 million in new capital alone, speaks volumes as to their financial wherewithal and desire to reach a final settlement with the Greene Family.

WHEREFORE, the Debtor prays for the entry of an Order consistent with the foregoing, and for such other relief as may be proper.

Dated: New York, New York
       August 5, 2014

                                       Goldberg Weprin Finkel Goldstein LLP
                                       *Attorneys for the Debtor*
                                       1501 Broadway, 22nd Floor
                                       New York, NY 10036
                                       (212) 221-5700

                            By: _/s/ Kevin J. Nash_
                                       Kevin J. Nash, Esq.
                                       A Member of the Firm

x:\gwfg\new data\yen\word\keen equities llc- yc rubin (#rubyc.33297)\opposition to motion to lift stay 8-5-14 (v2).docx