**RABINOWITZ, LUBETKIN & TULLY, LLC**
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey 07039
(973) 597-9100
(973) 597-9119 (Fax)
*Counsel to Secured Creditor,*
*Hal J. Greene Living Trust, David A. Greene and*
*Trust u/w M. Greene FBO Sabrina Greene*

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>KEEN EQUITIES, LLC,<br><br>Debtor. | Case No. 13-46782 (NHL)<br><br>Chapter 11 |

**MEMORANDUM OF LAW OF HAL J. GREENE LIVING TRUST, DAVID A. GREENE AND TRUST U/W M. GREENE FBO SABRINA GREENE IN RESPONSE TO DEBTOR'S OBJECTION TO VARIOUS ASPECTS OF SECURED CLAIM AND IN SUPPORT OF CROSS-MOTION TO: (i) FIX AMOUNT OF POST-PETITION CLAIM; AND (ii) VACATE THE AUTOMATIC STAY TO ALLOW CONFIRMATION OF THE REFEREE'S FINDINGS**

**RABINOWITZ, LUBETKIN & TULLY, LLC**
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey 07039
*Counsel to Secured Creditor,*
*Hal J. Greene Living Trust, David A. Greene and*
*Trust u/w M. Greene FBO Sabrina Greene*

On the Brief:
    LAURA E. QUINN
    BARRY J. ROY

On the Brief and Of Counsel:
    JONATHAN I. RABINOWITZ
    JEFFREY A. COOPER

## **TABLE OF CONTENTS**

**PAGE**

Table of Authorities ..................................... ii

Preliminary Statement .................................. 1

Statement of Facts ...................................... 4

POINT I - The *Rooker-Feldman* Doctrine Precludes This Court
From Considering The Objection ......................... 11

POINT II - Even If The *Rooker-Feldman* Doctrine Does Not
Apply, The Doctrines Of Collateral Estoppel And Res Judicata
Bar The Bankruptcy Court From Re-Litigating The Issues
Already Determined Or Which Could Have Been Determined In
The State Court Proceeding

    A. Collateral Estoppel Precludes This Court From
    Relitigating The Issues Of Proper Notice of Default
    And Acceleration, And, Hence, The Issues Of The Greene
    Family's Entitlement To The Default Interest Rate And
    Late Fees ...................................... 16

    B. Res Judicata Precludes This Court From Relitigating
    The Issues Of Proper Notice Of Default And
    Acceleration, And, Hence, The Issues Of The Greene
    Family's Entitlement To The Default Interest Rate And
    Late Fees ...................................... 18

POINT III - In The Alternative, The Doctrine Of Waiver Bars The
Bankruptcy Court From Re-Litigating The Issues Already
Determined Or Which Could Have Been Determined In The State
Court Proceeding ........................................ 20

i

POINT IV - The Referee's Report Must Be Given Effect By Thew
Bankruptcy Court Despite The Fact That It Has Not Been Confirmed
By The State Court, Or, In The Alternative, Stay Relief Should
Be Granted To The Greene Family To Proceed With The Motion In
The State Court To Confirm The Referee's Report

A.  The  Bankruptcy  Court  Must  Give  Effect  To  The
Referee's Report ............................    24

B.  In  The  Alternative,  The  Greene  Family  must  Be
Granted Stay Relief .........................    26

POINT V - If The Court Finds That It Has Jurisdiction To
Entertain Debtor's Objection, And That Consideration Of The
Issues Are Not Precluded By Rooker-Feldman, Res Judicata,
Collateral Estoppel Or Waiver, Then The Relief Sought By Debtor
Must Be Denied On The Merits

A. The Notice Of Default Was Proper And
Sufficient ...................................    30

B. Even If The Notice Of Default Did Not
Accelerate The Loan, The Complaint Declared
An Acceleration ..............................    32

C. The Greene Family Is Entitled To Both
Pre-Petition Default Interest And Late Charges .    34

D. The Greene Family Is Entitled To Pre-Petition
Legal Fees ...................................    35

POINT VI - This Court Should Grant The Cross-Motion To Determine
Post-Petition Interest, Costs And Attorneys' Fees ........    37

Conclusion ............................................ ..    42

## TABLE OF AUTHORITIES

### Cases

56 Walker, LLC,
  2014 WL 1228835, *3 (Bankr.S.D.N.Y. Mar. 25, 2014) ..11, 16, 18

125 Skillman Ave. Corp. v. American Home Assur. Co.,
  425 N.Y.S. 2d 716 (N.Y. City Civ. Ct. 1980) ................ 21

231 Fourth Ave. Lyceun, LLC,
  513 B.R. 25 (Bankr.E.D.N.Y. 2014) ......................... 11

400 walnut Assocs., L.P.,
  473 B.R. 603 (E.D.Pa. 2012) ............................... 38

785 Partners LLC,
  470 B.R. 126 (Bankr. S.D.N.Y.) .................... 29, 34, 38

Albertina Realty Co. v. Rosbro Realty Corp.,
  258 N.Y. 472 (1932) ....................................... 32

Banco Popular North America v. 335-345 Green LLC,
  (34 Misc.3d 1216 (Aup. Ct. Kings County 2012) ............. 31

Baybank-Middlesex v. Ralar Distributors, Inc.,
  69 F.3d 1200 (1st Cir. 1995) .............................. 38

Brentwood Outpatient, Ltd., cert. den., Williamson County v.
  Bondholder Committee, 514 U.S. 1096 (1995)43 F.3d 256 (6th Cir.
  1994) .................................................... 38

Chaitan,
  517 B.R. 419(Bankr.E.D.N.Y. 2014) .......... 11, 12, 14, 16, 18

Charter One Bank, FSB v. Leone
  45 A.D.3d 958 (2007) ...................................... 32

Citibank, N.A. v. Swiatkowski,
  2012 WL 542681, at *4 (E.D.N.Y. Feb. 21, 2012) ............. 12

City Streets Realty Corp. v. Jan Jay Const. Enterprises Corp.,
  88 A.D.2d 558 (1982) ........................................ 32

Dellicarri v. Hirschfeld,
  210 A.D.2d 584 (3d Dept. 1994) ............................. 31

Emery v. Fishmarket Inn of Granite Springs, Inc.,
  173 A.D.2d 765 (1991) ...................................... 40

Emigrant Funding Corp.; v. 7021 LLC,
  25 Misc.3d 1220(A), *4 (2009) ............................. 40

Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,
  544 U.S. 280 (2005) ........................................ 11

Five Boroughs Mortg. Co., Inc.,
  176 B.R. 708 (Bankr. E.D.N.Y. 1995) ....................... 24

Fortune Limousine Service, Inc. v. Nextel Communications, appeal
  den. 8 N.Y. 3d 816 (C.A.N.Y. 2007)35 A.D.3d 350 (2d Dept. 2006)
  ........................................................... 31

General Growth Props., Inc.,
  451 B.R. 323 (Bankr. S.D.N.Y. 2011 ........................ 38

Goldberg v. Geltman's of Coney Island,
  205 Misc. 858 (Sup. Ct. 1954) ............................. 14

Hoblock v. Albany Co. Board of Elections,
  422 F.3d 77 (2d Cir. 2005) ................................ 12

Hoffinger Industries, Inc. v. Alabama Ave. Realty, Inc.,
  68 A.D.3d 818 (2009) ...................................... 35

Jan S. v. Leonard S.,
  26 Misc. 3d 243 (Sup. Ct. New York County 2009) ........... 25

Jeffreys v. Griffin,
  1 N.Y. 3d 34 (2003) ....................................... 16

Jefpaul Garage Corp. v. Presbyterian Hosp. in New York,
  61 N.Y. 2d 442 (1984) ..................................... 20

Lake Charles Retail Development LLC v. LBUBS,
  2014 WL 4948234, *4 (Bankr.E.D.N.Y.) ...................... 11

Lance v. Dennis,
  546 U.S. 459 (2006) ....................................... 11

*Logue v. Young*,
   94 A.D.2d 827 (3d Dept. 1983) ............................. 32

*Marathon Structured Finance Fund L.P. v. Pektor*,
   2010 WL 2102628, \*1 ...................................... 35

*Matter of Holy Spirit Assn. for Unification of World
   Christianity v. Tax Commn. of the City of New York*,
   81 A.D.2d 64 (1st Dept. 1997), rev'd on facts, 55 N.Y. 2d 512
   (1982) .................................................... 25

*Metropolitan Transportation Auth. v. Cosmopolitan Aviation
   Corp.*, 99 A.D. 2d 767 (2nd Dept. 1984), aff'd, 64 N.Y. 2d 623
   (C.A.N.Y. 1984) .......................................... 22

*Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*,
   14 F. Supp. 3d 191 (S.D.N.Y. 2014) ...................... 12

*Nager v. Panadis*,
   238 A.D.2d 135 (1st Dept. 1997) ......................... 25

*Namer v. 152-54-56 W. 15th St. Realty Corp.*,
   108 A.2d 705 (1st Dept. 1985) ........................... 25

*Nat'l Bank of Stamford v. Van Keuren*,
   184 A.D. 2d 92 (1992) ................................... 14

*Northeast Industrial Development Corp.*,
   513 B.R. 825 (Bankr.S.D.N.Y. 2014) ...................... 29

*Nussdorf v. Kakach*,
   22 Misc.3d 1111(A),\*9 (2009) ........................... 35

*Onewest Bank FSB v. Berry*,
   2009 WL 3417852, at \*3 (N.Y. Sup. Oct. 23, 2009) .......... 20

*Parr Meadows Racing Ass'n. Inc.*,
   880 F.2d 1540 (2d Cir. 1989), cert. den., Suffolk County
   Treasurer v. Barr, 493 U.S. 1058 (1990) ................... 38

*Petrella v. Siegel*,
   843 F.2d 87 (2d Cir. 1988) .............................. 19

*P.G. Realty Co.*,
   220 B.R. 773 (Bankr.E.D.N.Y. 1998) ...................... 38

*Ply-Gem Indus. v. Inip Co.*,
   798 N.Y.S. 2d 712 (N.Y. Sup. 2004) ..................... 20

Riggs v. Pursell,
  66 N.Y. 193 (1876) ....................................... 14

Robbins,
  964 F.2d 342 (4th Cir. 1992) ............................... 27

Route One West Windsor Ltd. Partnership,
  225 B.R. 76 (Bankr. D.N.J. 1998) ........................... 39

Ruskin v. Griffiths,
  269 F.2d 827 (2d Cir. 1959), cert. den., 361 U.S. 947 (1960) 40

Ryan v. N.Y. Tel. Co.,
  62 N.Y. 2d 494 (1984) ..................................... 16

Sanders,
  408 B.R. 25 (Bankr.E.D.N.Y. 2009) ......................... 12

Sheba Realty Corp.,
  2014 WL 1373094 (Bankr. E.D.N.Y. 2014) .................... 33

Soares,
  107 F.3d 969 (1st Cir. 1997) ............................... 28

Suarez v. Ingalis,
  282 A.D.2d 599 (2d Dept. 2001) ............................ 31

Terry Ltd. P'ship,
  27 F.3d 241 (7th Cir.), cert. den., Favex Holdings, N.V. v.
  Equitable Life Ins. Co. of Iowa, 513 U.S. 948 (1994) ....... 38

Urban Communicators v. PCS Ltd. P'ship v. Gabriel Capital, L.P.,
  394 B.R. 325 (S.D.N.Y. 2008) .............................. 38

Vest Assocs.,
  217 B.R. 696 (Bankr.S.D.N.Y. 1998) .................... 38, 39

Wallace v. 600 Partners Co.,
  86 N.Y.2d 543 (1995) ................................. 34, 35

## Statutes

N.J.S.A. 2A:15-5.3 ......................................... 13

N.J.S.A. 2A:53A-1 .......................................... 13

11 U.S.C. § 506(b) ................................... 3, 35, 40

## PRELIMINARY STATEMENT

Debtor, Keen Equities, LLC ("Debtor" or "Keen") has filed an Objection (the "Objection") to the secured proof of claim (the "POC") filed by Hal J. Greene Living Trust, David A. Greene and Trust u/w M. Greene f/b/o Sabrina Greene (the "Greene Family"). The POC is based upon a mortgage granted by Debtor to the Greene Family in connection with the pre-petition purchase of approximately 860 acres of largely vacant land. Debtor does not dispute that it defaulted on the mortgage as of October 1, 2010, or the Greene Family's entitlement to the amount of: 1) unpaid principal; 2) reimbursement for advances made for real estate taxes and insurance; and 3) unpaid interest for September 2010 at the non-default rate of 6.5%. Rather, Debtor disputes: 1) the Greene Family's entitlement to default interest from October 1, 2010 through April 1, 2013 at the rate of 18%; 2) monthly late charges of 5% from October 1, 2010 through April 1, 2013; 3) legal fees; and 4) additional interest at the default rate of 18% from April 1, 2013 through the November 12, 2013 (the "Petition Date").

The Greene Family filed a pre-petition foreclosure action in New York state court. The New York State Supreme Court entered summary judgment on the first and second causes of action of the foreclosure complaint in favor of the Greene Family, and further entered an order of reference to a referee (the "Referee") to ascertain and compute the amount due on the Note and Mortgage. The Referee subsequently issued a report (the "Referee's Report"), calculating and awarding the principal balance due as of September 1, 2010, interest at the non-default rate of 6.5% from September 1, 2010 through September 30, 2010, interest at the default rate of 18% from October 1, 2010 through April 4, 2013, monthly late charges of 5% from October 1, 2010 through April 1, 2013, unreimbursed real estate taxes and insurance advanced by the Greene

Family, and the Greene Family's legal fees and disbursements through April 27, 2013. Debtor filed its voluntary Chapter 11 Petition prior to the confirmation of the Referee's Report.

In the Objection, Debtor raises substantive arguments which were never raised in the New York State Supreme Court, nor before the Referee. Specifically, Debtor argues that the Greene Family is not entitled to default interest and late charges because the default and acceleration were not properly noticed or declared. The Debtor further argues that the Greene Family is not entitled to both default interest and late fees.

First, notwithstanding Debtor's substantive arguments, this Court's consideration of the Objection is barred on a jurisdictional basis by the *Rooker-Feldman* doctrine. Further, even if the Court finds the *Rooker-Feldman* doctrine inapplicable, the Debtor's contentions are barred by the doctrines of collateral estoppel and res judicata. Moreover, should the Court find that neither the *Rooker-Feldman* doctrine nor the doctrines of collateral estoppel and res judicata bar its consideration of the substantive issues raised by Debtor, Debtor waived its right to raise these issues, as it had a full and fair opportunity to raise these issues before either the state court judge and/or the Referee and chose not to do so.

Even if the Court does not apply the *Rooker-Feldman* doctrine, collateral estoppel, res judicata or waiver, it must give effect to the Referee's Report. A bankruptcy court has the authority only to determine whether a claim is allowable in bankruptcy, not the authority to determine the amount of the underlying debt in a state court foreclosure action. If this Court finds that it cannot give effect to the Referee's Report without state court confirmation, then the Court should grant the Greene Family relief from the automatic stay to obtain such confirmation, as requested in the Greene Family's cross-motion.

While this Court should never reach the merits of Debtor's substantive arguments, such arguments are without merit. First, the Greene Family's notice of default was proper and sufficient. Furthermore, even if the notice of default did not accelerate the loan, the filing of the foreclosure complaint acted to declare an acceleration. Finally, the Greene Family is entitled to both pre-petition default interest and late fees, as well as attorneys' fees.

As for post-petition default interest, costs and attorneys' fees, the Greene Family has filed the within cross-motion seeking such relief. While not included in the POC, Debtor argues in a footnote that the Greene Family is not entitled to post-petition default interest. Debtor is incorrect as a matter of law.

Accordingly, the Greene Family respectfully requests that this Court deny the Objection and determine the allowed amount of the Greene Family's claim as of the petition date (the "Pre-Petition Claim"). In addition, because the Greene Family's claim is oversecured, the Court should determine that the Greene Family is entitled to post-petition default interest, late charges, and attorneys' fees pursuant to 11 U.S.C. § 506(b).

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On or about July 19, 2005, Lake Anne Realty Corporation ("Lake Anne") entered into a contract to sell certain real property (the "Real Property") as the Seller to Keen as the Buyer. The Real Property is 860 acres of largely vacant land in South Blooming Grove, New York. The purchase price was $15,000,000. The purchase price was payable $5,000,000 in cash at closing and a $10,000,000 note (the "Note") secured by a mortgage (the "Mortgage") on the Real Property.

The sale transaction was closed on or about January 9, 2006. At the closing, the cash component of the purchase price was paid and the Debtor executed the Note and the Mortgage. The Mortgage was duly recorded. By assignments dated December 31, 2006 and December 8, 2009, Lake Anne's interest in the Note and Mortgage were assigned to the Greene Family.

Several terms and provisions of the Note and Mortgage are relevant to the Objection. The relevant terms and provisions of the Note are as follows:

> "7. LATE CHARGES: If the Lender does not receive any payment within ten days of the due date thereof, then for each such late payment the Borrower shall pay a late charge. The late charge shall be five (5%) percent of the unpaid amount. ..."

> "10. LENDER'S RIGHT OF ACCELERATION: The Lender may declare the unpaid principal, interest, fees and other amounts and charges specified under this Note due immediately upon the occurrence of an Event of Default, as defined below. ... Each of the following shall constitute an Event of Default: ...(b) failure of the Borrower to make any payment due hereunder within five days after written notice of default given by the Lender; (c) fifteen days default in the payment of any tax...; (h) if Borrower fails to comply with any other provision of this Note, the Mortgage, or any of the Loan Documents, within thirty (30) days after having received notice from the Lender. The foregoing notice and cure period shall not apply as to any payment of principal, interest and/or other amounts due under this Note and the Mortgage, and any matters covered by subsections (a) – (g) hereinabove. The

4

Lender's failure to accelerate for any cause shall not prevent the Lender from doing so for a later cause."

"11. DEFAULT RATE: In the event of any default hereunder or under the Loan Documents, interest as of the date of default shall accrue on the unpaid balance of the Loan at a rate equal to the lesser of eighteen (18%) percent per annum or the highest rate permitted by law... ."

"16. COST OF COLLECTION: If the Lender has to consult an attorney, or go to court, or if the Borrower fails to comply with the terms of this Note, the Borrower will pay all Lenders' collection or enforcement costs, plus reasonable attorneys' fees and disbursements, including, but not limited to any fees incurred in connection with prejudgment and post-judgment collection costs, whether or not litigation is instituted by the Lender."

"19. LOAN CHARGES: Any and all payments under the Loan Documents, <u>including without limitation, interest at the Default Rate, late charges, and any other charges or amounts due hereunder</u> constitute material covenants of the Loan and are: (1) a material inducement for the Lender to enter into this Loan; (2) the Lender would not have entered into this Loan without the Borrower's agreement and covenant to make the payments as specified in the Loan Documents; (3) some additional payments, such as the Default rate, are deemed by the Lender as compensation to the Lender for the increased risk associated with this Loan not being timely repaid and (4) the additional payments represent reasonable estimates to the Lender in allocating its resources (both personnel and financial) to the ongoing review, monitoring, administration and collection of the Loan. (emphasis added).

"21. SERVICE OF PROCESS: Borrower hereby appoints Leo Salzman, Esq., an attorney at law of the State of New York, having an address at 2116 Avenue J, Brooklyn, NY 11210, as Borrower's agent for service of process of any matters relating to this Note and the Loan Documents."

The Note lists the Debtor's address as "c/o Leo Salzman, 2116 Avenue J[,] Brooklyn[,] New York...11210[,]" without an alternate address.

The relevant provisions of the Mortgage are as follows:

"15. REMEDIES: Upon the happening of any one or more of said Events of Default, the entire unpaid balance of the principal, and

5

accrued interest, and all other sums secured by this Mortgage shall at the option of the Mortgagee become immediately due and payable without further notice or demand, and in any such Event of Default, Mortgagee may forthwith undertake any one or more of the following: (a) declare the debt to be immediately due and payable, and thereupon the same shall become immediately due and payable…"

"20. NOTICES: No notice, request, consent, approval, waiver or other communication under this Mortgage or the Note shall be effective unless, but any communication shall be effective and shall be deemed to have been given, if the same is in writing and is mailed by certified mail, return receipt requested, postage pre-paid, or by nationally recognized overnight courier, addressed: (a) to Mortgagor and Principals at Mortgagor's address as it then appears in the Mortgagee's records…"

"25. COUNSEL FEES: If the Mortgagee becomes a party (by intervention or otherwise) to any action or proceeding effecting the Premises or the title thereto or Mortgagee's interest under this Mortgage, or employs an attorney to collect any of the indebtedness or to enforce performance of the obligations, covenants and agreements secured hereby or under the Loan Documents, or to advise Mortgagee with respect to its rights and remedies hereunder or under the Loan Documents in the case of an Event of Default or threatened Event of Default, Mortgagor shall reimburse Mortgagee forthwith, upon written notice and without further demand for all reasonable costs, charges and counsel fees incurred by the Mortgagee in any such case, whether or not suit be commenced, and the same shall be added to the principal sum secured hereby as a further charge and lien upon the Premises and should bear interest at the Default Rate provided for in the Note."

"35. LOAN CHARGES: …(3) some additional payments, such as interest at the Default Rate and late charges, are deemed by the Lender as compensation to the Lender for the increased risk associated with this Loan not being timely repaid and (4) the additional payments represent reasonable estimates of the cost to the Lender in allocating its resources (both personnel and financial) to the ongoing review, monitoring, administration and collection of the Loan…."

"36. SERVICE OF PROCESS: Mortgagor and principals hereby appoint Leo Salzman, Esq., an attorney at law of the State of New York, having an address at 2116 Avenue J, Brooklyn, NY 11210,

as Mortgagor's and Principal's agent for the service of process of
any matters relating to this Mortgage and the Loan Documents."

As in the Note, the Mortgage lists the Debtor's address as "c/o Leo Salzman, 2116 Avenue J, Brooklyn, New York 11210[.]"

The Debtor made payments on account of the Note; however, it failed to make the payment due October 1, 2010. As a result, Hal Greene called Debtor and spoke to "Blimie," (Debtor's clerk), Samuel Weisner (Debtor's agent) and Ziggy Brach (one of Debtor's principals). After getting unsatisfactory answers, the Greene Family sent a notice of payment default dated October 18, 2010 (the "Notice of Default") via email to Blimie, Debtor's clerk at "Keen Equities Billing," blimiet@pyleaudio.com and to Jacob "Smith," known to be Keen's accountant, at jacob@hbacct.com. On October 27, 2010, the Greene Family resent the Notice of Default by certified mail, return receipt requested, addressed to Keen, c/o Samuel Weisner, Sound Around, the Debtor's property manager, with a copy to Leo Salzman. Keen, c/o Sound Around acknowledged receipt of the Notice of Default on October 29, 2010.

The Notice of Default states: "Please be advisd that according to the terms of the mortgage dated 7/19/2005 you are now in default. Please make the full payment of $170,074.68 by 10/24/2010 in order to avoid foreclosure." The payment default was not cured by the Debtor.

On or about January 19, 2011, the Greene Family filed a complaint (the "Foreclosure Complaint") commencing a foreclosure action against the Debtor pursuant to the Mortgage in the Supreme Court of the State of New York, County of Orange (the "Foreclosure Action"). On the same date that the Greene Family filed the Foreclosure Complaint, January 19, 2011, it filed a Notice of Pendency in the Supreme Court. The Foreclosure Complaint was duly served on Debtor.

7

The Foreclosure Complaint contains three (3) causes of action, two of which are relevant to the Objection.  The First Cause of Action is relevant because it seeks:  (i) the right to foreclose; and (ii) to fix the amount of the debt due under the Note and Mortgage.  With regard to fixing the amount of the debt, paragraph D of the Wherefore Clause of the First Cause of Action of the Foreclosure Complaint requests that "the Plaintiffs be paid the amount due on the Note and the purchase money Mortgage, with interest to the time of such payment and the expenses of such sale, together with any monies advanced and paid pursuant to any term or provision of the Note and/or the Purchase Money Mortgage set forth in this Complaint…together with the taxes, water and sewer charges, insurance premiums, interest and installments of principal on prior mortgages, and all other charges and liens therein to be paid, with interest upon such amounts from the dates of the respective payments and advances thereof, so far as the amount of such moneys properly applicable thereto will pay the same…".  Paragraph 17 of the First Cause of Action of the Foreclosure Complaint alleges that "[b]y reason of such defaults, the plaintiffs have elected and hereby elect to accelerate payment of the entire principal balance remaining unpaid on the Note and the Purchase Money Mortgage."

Paragraph G of the Wherefore Clause of the Second Cause of Action of the Foreclosure Complaint seeks to have "the Court set the amount of reasonable attorneys' fees, costs, allowances and disbursements incurred by the plaintiffs, which are to be included in the judgment of foreclosure and sale…"

The Debtor filed an answer to the Foreclosure Complaint dated May 31, 2011 (the "Answer").  The Answer raises only two affirmative defenses, to wit, that the Greene Family fraudulently concealed an environmental condition at the Real Property, and that the Greene Family operated an unlicensed waste transfer station at the Real Property.  The Debtor did not

raise as an affirmative defense in the Answer, although it could have, inadequate notice of default, inadequate notice of acceleration, or lack of entitlement to attorneys' fees, late charges and default interest.

On or about October 10, 2012, the New York State Supreme Court entered summary judgment on the First and Second Causes of Action of the Foreclosure Complaint in favor of the Greene Family rejecting the affirmative defenses raised by the Debtor (the "SJ Order"). On or about November 30, 2012, the New York State Supreme Court entered an order of reference to a referee (the "Referee") to ascertain and compute the amount due on the Note and Mortgage.

On or about April 4, 2013, a hearing was held before the Referee on notice to the Debtor. Counsel for Hal Greene and the Greene Family attended the hearing. The Debtor did not attend the hearing and its counsel acknowledged by phone to the Referee that it did not intend to appear or participate. At the hearing, the Referee considered multiple exhibits which were admitted into evidence and heard the testimony of Hal J. Greene.

On or about September 24, 2013, the Referee issued a report (the "Referee's Report"). As part of the Referee's Report, he computed the amount due the Greene Family by the Debtor on the Note and Mortgage. The total debt owed as of April 4, 2013 was $6,499,184.12, calculated as follows:

1.      Principal balance as of September 1, 2010 of $3,924,645.93;

2.      Interest from September 1, 2010 through September 30, 2010 at the rate of 6.50% per annum for a total of $21,258.50;

3.      Interest from October 1, 2010 through April 4, 2013 at the rate of 18% per annum as the default rate of interest provided for in the Note in the total amount of $1,772,854.72;

4.    Late charges of 5% per month at the rate of $7,330.27 per month for each month from October 1, 2010 through April 1, 2013 for a total of $219,908.21;

5.    Unreimbursed real estate taxes and insurance advanced by the Lender in the amount of $320,415.11; and

6.    Legal fees and disbursements in the amount of $240,091.66.

Prior to the confirmation of the Referee's Report, on November 12, 2013, the Debtor filed a voluntary Chapter 11 Petition in this Court and was thereafter continued in possession of its assets and the management of its business as a debtor-in-possession.

In or about December 5, 2013, the Greene Family filed a proof of claim in the Debtor's Chapter 11 case in the amount of $6,926,916.76 plus attorneys' fees and post-petition interest (the "POC").

On January 29, 2015, the Debtor filed the within objection to the POC (the "Objection") alleging that the Greene Family is not entitled to default interest, attorneys' fees and late charges. This Memorandum of Law and the Cooper and Greene Certifications comprise the Greene Family's response to the Objection.

## POINT I

### THE *ROOKER-FELDMAN* DOCTRINE PRECLUDES
### THIS COURT FROM CONSIDERING THE OBJECTION

The *Rooker-Feldman* doctrine is a jurisdictional doctrine which "limits federal subject matter jurisdiction by prohibiting federal courts, other than the Supreme Court of the United States, from acting as courts of appeal by reviewing state court decisions." In re: Lake Charles Retail Development LLC v. LBUBS 2004-C8 Derek Drive, LLC (In re Lake Charles Retail Developtment LLC), 2014 WL 4948234, *4 (Bankr.E.D.N.Y.)(citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)). The *Rooker-Feldman* doctrine "precludes federal jurisdiction if the relief requested in federal court would reverse or void a state court decision." In re 56 Walker LLC, 2014 WL 1228835, at *3 (Bankr. S.D.N.Y. Mar. 25, 2014). Pursuant to the *Rooker-Feldman* doctrine, a bankruptcy court has no subject-matter jurisdiction to review state court judgments. Id.; In re Chaitan, 517 B.R. 419, 425 (Bankr.E.D.N.Y. 2014).

The *Rooker-Feldman* doctrine is "confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" In re Chaitan, 517 B.R. at 425 (citing Lance v. Dennis, 546 U.S. 459, 464, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)); In re 231 Fourth Ave. Lyceum, LLC, 513 B.R. 25, 31-32 (Bankr. E.D.N.Y. 2014). The Second Circuit has delineated four requirements for the application of the *Rooker-Feldman* doctrine: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3)

"the plaintiff must invite district court review and rejection of that judgment[;]" and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." Citibank, N.A. v. Swiatkowski, 2012 WL 542681, at * 4 (E.D.N.Y. Feb. 21, 2012) (remanding foreclosure action back to state court based on, among other things, the *Rooker-Feldman* doctrine) (quoting Hoblock v. Albany Co. Board of Elections, 422 F.3d 77, 85 (2d Cir. 2005)); In re Sanders, 408 B.R. 25, 32-34 (Bankr. E.D.N.Y. 2009) (*Rooker-Feldman* doctrine applied to prevent bankruptcy court from reviewing validity of state court Mortgage foreclosure judgment for purpose of ruling on Chapter 13 debtor-mortgagor's motion for relief from prior order of the bankruptcy court); Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A., 14 F.Supp.3d 191, 224-225 (S.D.N.Y. 2014).

In determining whether the *Rooker-Feldman* doctrine applies to the within matter, the Court must be cognizant of the procedural status of the state court foreclosure proceedings. As admitted by Debtor, the Supreme Court entered summary judgment in favor of the Greene Family on October 10, 2012. This final judgment was not appealed. As part of its summary judgment decision, the Supreme Court directed an order of reference to a Referee to compute damages. The Referee's Report was filed on September 24, 2013 and computed the amounts due as a result of Debtor's default on the Mortgage and Note. The Greene Family subsequently filed a motion to confirm the Referee's Report on or about October 15, 2013, but the Debtor filed its bankruptcy petition prior to a hearing on that motion to confirm.

In its Objection, Debtor makes the blanket argument that because the Referee's Report was never confirmed by the Supreme Court, "the Bankruptcy Court retains a free hand to rule upon the validity and effectiveness of the purported acceleration without offending the Rooker-Feldman doctrine[,]" citing In re Chaitan, 517 B.R. at 425-426. Debtor fails to recognize the

distinction between the Order for Summary Judgment and the Referee's Report. The Order for Summary Judgment is the legal disposition of the matter, while the role of the Referee is simply to perform the mathematical computations.

Debtor's argument that the *Rooker-Feldman* doctrine is inapplicable due to the fact that the Referee's Report was never confirmed is misplaced. Debtor's Objection is based upon the argument that the Greene Family is not entitled to recover default interest, late charges and attorneys' fees, which argument, in turn, is based upon alleged deficiencies in the manner in which the Mortgage debt was originally declared in default and accelerated, namely, the Greene Family's alleged failure to provide proper notices of default and acceleration. Putting aside the merits of Debtor's substantive arguments as to proper notices of default and acceleration, (which are addressed in Point VI, *infra*), these issues are legal issues, which were the province of the Supreme Court, and not the Referee and were decided by the Supreme Court.

With regard to the issues of whether the Greene Family provided proper notices of default and acceleration, the four *Rooker-Feldman* requirements are satisfied. First, Debtor lost in state court on the summary judgment motion in the foreclosure action as to the legal issues involved in the allowance of the Greene Family's Mortgage claim. Second, the Debtor, through the Objection, is now complaining of injuries it sustained as a result of that summary judgment, *i.e.*, the obligation to pay default rate interest, late fees and attorneys' fees on a monetary debt to the Greene Family. Third, Debtor is now inviting the Bankruptcy Court to review and reject the summary judgment, inclusive of the finding that Debtor owes default interest on the Mortgage debt. Finally, the Supreme Court rendered its summary judgment prior to the commencement of the bankruptcy proceedings. Accordingly, this Court lacks subject-matter jurisdiction to review the issues raised and considered in the summary judgment motion, inclusive of the issue of

proper notice of default and acceleration and entitlement to default interest and late fees, in favor of the Greene Family under the *Rooker-Feldman* doctrine.

Clearly, Debtor cannot invite review of the summary judgment decision under the *Rooker-Feldman* doctrine. Further, an analysis of the relationship between the SJ Order and the Referee's Report supports this outcome. Debtor argues that because the Referee's Report was not confirmed by the Supreme Court, the *Rooker-Feldman* doctrine does not apply, citing In re Chaitan, 517 B.R. at 425-426. Although Debtor does not explicitly make the argument, Debtor apparently argues that the Referee's Report is an administrative decision, as was the case in In re Chaitan. This Court noted in In re Chaitan that "[o]nly after a state court reviews an administrative agency's decision does the decision constitute a state-court judgment to which *Rooker-Feldman* applies." Id. at 426.

This case is distinguishable from In re Chaitan, which involved decisions by the New York City Office of Administrative Trials and Hearings ("OATH") and the Environmental Control Board ("ECB"). As noted by this Court in In re Chaitan, "ECB andf OATH operate outside of the New York State court system and their decisions are administrative." Id. Here, application of the Court's holding in In re Chaitan is unwarranted because the Referee is an arm of the Supreme Court and thus, within the protective cloak of the Supreme Court with regard to *Rooker-Feldman*. "[An] appointed Referee is an officer of the court and must perform his duties impartially without regard to the interests of any particular person in the proceeding[.]" Nat'l Bank of Stamford v. Van Keuren, 184 A.D.2d 92, 95, 590 N.Y.S.2d 946 (1992) (citing Riggs v. Pursell, 66 N.Y. 193, 198 (1876); Goldberg v. Feltman's of Coney Island, 205 Misc. 858, 864 (Sup. Ct. 1954); 73 NY Jur 2d, Judicial Sales, §5, at 519-520)).

The administrative agency exception to the *Rooker-Feldman* doctrine does not apply to a situation where an arm of the court, be it a master, Referee or receiver, makes the appropriate decision. The case law is clear that the *Rooker-Feldman* administrative agency exception applies only to an administrative agency to the extent that it is outside the protective cloak of the court and the agency's decision has not been reviewed by the court. Thus, any attempt by Debtor to suggest, under the administrative agency exception to the *Rooker-Feldman* doctrine, that the failure of the Supreme Court to confirm the Referee's Report opens the door for Bankruptcy Court consideration is misplaced.

Furthermore, the argument that the *Rooker-Feldman* doctrine is inapplicable to the Referee's Report is a red herring. The underlying decision of which Debtor complains is the determination that the Greene Family is entitled to default interest, late charges and attorneys' fees. Again, this was not the determination of the Referee, but of the Supreme Court in granting summary judgment. The Referee simply performed the mathematical computations. The Objection does not challenge the computations, but only the entitlement, which has already been determined by the Supreme Court.

Debtor's Objection seeks to accomplish precisely what the *Rooker-Feldman* doctrine is designed to avoid, namely, the review and overturning of a state court decision. This Court simply has no authority to do so, and the Supreme Court's decision, as well as the computations contained in the Referee's Report, must remain in effect. Accordingly, because this Court has no jurisdiction to consider Debtor's Objection, the Greene Family's filed proof of claim must be deemed allowed, and an appropriate order entered allowing the secured claim as filed.

## POINT II

### EVEN IF THE *ROOKER-FELDMAN* DOCTRINE DOES NOT APPLY, THE DOCTRINES OF COLLATERAL ESTOPPEL AND RES JUDICATA BAR THE BANKRUPTCY COURT FROM RE-LITIGATING THE ISSUES ALREADY DETERMINED OR WHICH COULD HAVE BEEN DETERMINED IN THE STATE COURT PROCEEDING

A.    **Collateral Estoppel Precludes this Court from Relitigating the Issues of Proper Notice of Default and Acceleration, and, Hence, the Issues of the Greene Family's Entitlement to the Default Interest Rate and Late Fees**

"Collateral estoppel prohibits re-litigating decided issues of fact or law." In re Chaitan, 517 B.R. at 427.   In order to apply collateral estoppel under New York law, the issue must be identical to the one raised in a prior action or proceeding, and the party against whom collateral estoppel is sought must have had a full and fair opportunity to be heard in the prior proceeding. Id.; In re 56 Walker, 2014 WL 1228835, at *2.   Unlike the related doctrine of res judicata, collateral estoppel does not require a final judgment in the prior proceeding, so long as there has been a final decision with regard to the issue to be given preclusive effect. In re 56 Walker, 2014 WL 1228835, at *2.

In addition, "New York applies...collateral estoppel to quasi-judicial. . .decisions." In re Chaitan, 517 B.R. at 427.   In order "[t]o qualify as a quasi-judicial proceeding, the agency must employ procedures 'sufficient to both quantitatively and qualitatively...to permit confidence that the facts asserted were adequately tested, and that the issue was fully aired.'" Id. (quoting Jeffreys v. Griffin, 1 N.Y.3d 34, 40-41, 769 N.Y.S.2d 184, 801 N.E.2d 404 (2003)). Accordingly, preclusive effect is given to decisions "'rendered pursuant to the adjudicatory authority of an agency...employing procedures substantially similar to those used in a court of law[.]'" Id. (quoting Ryan v N.Y. Tel. Co., 62 N.Y.2d 494, 499, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984)).

16

Here, Debtor argues that the Greene Family did not comply with the required notice provisions in giving notice of the default and acceleration, and, therefore, the default rate of interest was improperly applied and awarded. First, the issue of proper notice was decided as part of the Supreme Court's granting of summary judgment because, in order to award summary judgment, the Supreme Court necessarily found that proper notice of default and acceleration was provided to Debtor. Even if the summary judgment opinion did not explicitly address this issue, judgment could not have been entered if the issue of proper notice were not determined.

Furthermore, as discussed in Point III, *infra*, Debtor waived its right to raise the issue of proper notice. Debtor had a full and fair opportunity to raise the issue in the pleading stage in its Answer, and, further, could have attempted to raise it before the Supreme Court, but did not. Thus, the Supreme Court's granting of summary judgment was a final decision as to the issue of notice, and, accordingly, the imposition of the default interest rate.

To the extent that Debtor argues that the determination of the rate of default interest was a result of the Referee's decision[1], collateral estoppel may also be applied to the Referee's determinations. While the Referee is not an administrative agency, and, in fact, acts as an arm of the court, the proceeding before the Referee is akin to a quasi-judicial proceeding. The Referee's determinations, as demonstrated in the detailed Referee Report, were rendered pursuant to the Referee's adjudicatory authority employing procedures substantially similar to those used in a court of law. Accordingly, to the extent that Debtor argues that the Referee, (as opposed to the Supreme Court, as argued by the Greene Family), made the determination that the default rate of

---

[1] As argued previously, the Supreme Court's decision necessarily included a determination as to proper notice and application of the default interest rate. The matter was referred to the Referee simply for a mathematical computation of amounts due.

interest of 18% was appropriate, such determination is entitled to preclusive effect under the doctrine of collateral estoppel.

It should be noted that while Debtor had no right to raise the issue of improper notice or the entitlement to the default rate of interest before the Referee, as such argument was waived at the pleading stage and/or determined by the Supreme Court. Debtor could have *attempted* to raise the issue before the Referee. Debtor, however, actively chose not to participate in the proceedings before the Referee. The Referee Report carefully details the opportunity given to Debtor to participate, and Debtor's conscious decision to refrain from such participation. Debtor cannot now be heard to complain.

**B.    Res Judicata Precludes this Court from Relitigating the Issues of Proper Notice of Default and Acceleration, and, Hence, the Issues of the Greene Family's Entitlement to the Default Interest Rate and Late Fees**

Not only does collateral estoppel preclude Debtor from relitigating the issues of proper notice and the application of the default interest rate, but res judicata also applies to produce the same result. As this Court Noted in <u>Chaitan</u>:

> Res judicata prohibits re-litigating claims that could or should have been litigated in a prior proceeding. (citations omitted). New York State Courts apply res judicata liberally, taking a transactional approach such that "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or seeking a different remedy." (citations omitted).

<u>Id</u>. As with collateral estoppel, New York applies res judicata to quasi-administrative decisions. <u>Id</u>.

The distinction between collateral estoppel and res judicata is that "res judicata bars the further litigation of claims arising out of the same occurrences and transactions that were, or could have been, litigated[,]" whereas "collateral estoppel bars further litigation of issues raised and decided." <u>Id.</u> at 428. Res judicata also requires a final judgment. <u>56 Walker, LLC</u>, 2014

WL 1228835, *2.   Once a state court has made a final determination, however, that determination will be given res judicata effect even if the determination is being appealed. Petrella v. Siegel, 843 F.2d 87, 90 (2d Cir. 1988).

Here, the Supreme Court's summary judgment determination was a final decision.   Again, this decision necessarily included a determination that notice of default and acceleration were proper, and that the default rate of interest was proper.   Accordingy, res judicata applies to preclude this Court from relitigating that determination.

To the extent that Debtor argues that the determination as to the application of the default rate of interest was made by the Referee, the Referee's determination is also entitled to res judicata effect.   As argued in Point IIA., *supra*, the Referee proceedings are quasi-judicial and entitled to the application of res judicata.   While Debtor may argue that the Referee's Report was never confirmed, the motion to confirm the Referee's Report is analagous to an appeal, and does not change the finality of the Referee's determination for res judicata purposes.   Res judicata, therefore, precludes this Court from reconsidering the issues of notice and application of the default rate of interest.

## POINT III

## IN THE ALTERNATIVE, THE DOCTRINE OF WAIVER BARS THE BANKRUPTCY COURT FROM RE-LITIGATING THE ISSUES ALREADY DETERMINED OR WHICH COULD HAVE BEEN DETERMINED IN THE STATE COURT PROCEEDING

If the doctrines of collateral estoppel and res judicata did not bar Debtor's attempt to relitigate the issues of proper notice of default and acceleration, and the resulting application of the default rate of interest, the doctrine of waiver prohibits Debtor from now raising such arguments as it failed to raise them previously before the Supreme Court. Specifically, Debtor waived its right to raise lack of proper notice and imposition of default rate interest, late charges and attorneys' fees because it failed to plead such defense as an affirmative defense before the Supreme Court.

In general, a waiver has been defined as "the voluntary abandonment or relinquishment of a known right." See, Ply-Gem Indus. v. Inip Co., 798 N.Y.S.2d 712 (N.Y. Sup. 2004) (quoting Jefpaul Garage Corp. v. Presbyterian Hosp. in New York, 61 N.Y.2d 442, 446 (1984)). In cases involving conditions precedent, CPLR 3015 contains specific requirements as to asserting defenses:

> Rule 3015 - Particularity as to specific matters
>
> (a) Conditions precedent. The performance or occurrence of a condition precedent in a contract need not be pleaded. **A denial of performance or occurrence shall be made specifically and with particularity**. In case of such denial, the party relying upon the performance or occurrence shall be required to prove on the trial only such performance or occurrence as shall have been so specified. (emphasis added)

CPLR 3015(a) (emphasis added); see also Onewest Bank FSB v. Berry, 2009 WL 3417852, at *

3 (N.Y.Sup. Oct. 23, 2009); 125 Skillman Ave. Corp. v. American Home Assur. Co., 425

N.Y.S.2d 716, 717-718 (N.Y.City Civ. Ct. 1980).

Rule 3015(a) excuses a plaintiff from pleading that conditions precedent have been met.

CPLR 3015(a); 125 Skillman Ave. Corp., 425 N.Y.S.2d at 717. Instead, it places an affirmative

burden on a defendant to deny satisfaction of such conditions precedent "specifically and with

particularity." Id. Only when a defendant pleads the failure to fulfill a condition precedent is a

"plaintiff required to prove 'such performance or occurrence (of the condition) as shall have

been...specified' by defendant's pleading." 125 Skillman Ave. Corp., 425 N.Y.S.2d at 718. Even

when a complaint is silent as to the fulfillment of a condition precedent or alleges performance

only generally, a defendant must meet the requirement of specific pleading contained in Rule

3015(a). Id. Furthermore, "CPLR 3018(b) imposes a concurrent burden on defendant to plead

all matters which 'would raise issues of fact not appearing on the face of the complaint." Id.

The defense of improper notice or denial of receipt of notice of default in a mortgage

foreclosure action is an affirmative defense required to be pled under CPLR 3015(a). Onewest

Bank FSB v. Berry, 2009 WL 3417852, at * 3. Failure to plead this defense waives it, and

precludes a defendant from later raising a contrary contention. Id.; 125 Skillman Ave. Corp.,

425 N.Y.S.2d at 718.

In Ply-Gem Industries, Inc., the plaintiff tenants argued that the landlord had failed to

strictly comply with the notice provisions in the lease, and sought dismissal of the landlord's

counterclaims. 5 Misc.3d at 1001(A). The defense was one required to be raised by NYS Real

Property Actions and Proceedings Law (RPAPL) § 731(2). Id. The plaintiffs failed to raise the

defense until over two and a half years after having received the notice, and well over two years

21

after the summary proceeding petition was served and filed. Id. In holding that, as a matter of law, the plaintiffs had "long since waived their 'right to complain about any defect which may have existed in the default notice[,]'" the Court noted that "[t]hroughout [extensive] litigation, no mention of any defective notice was raised until this second motion for summary judgment." Id. (quoting Metropolitan Transportation Auth. v. Cosmopolitan Aviation Corp., 99 A.D.2d 767, 768 (2nd Dept. 1984), aff'd, 64 N.Y. 2d 623 (C.A.N.Y. 1984)).

Here, Debtor failed to raise the notice issue it now raises before this Court, to wit, that the October 18, 2010 notice of default was improperly served, or that a separate notice of acceleration was not issued, either in the Answer, in response to the Greene Family's summary judgment motion, or before the Referee. The Complaint was filed in January 2011, the Answer filed in May 2011, the summary judgment hearing held on September 20, 2012, and the Referee hearing held on April 4, 2013. Not only was improper notice not pleaded as an affirmative defense as required by CPLR 3015(a), but Debtor did not even raise the issue throughout the extensive state court litigation which took place over the course of two years.

It should also be noted that, as is clearly set forth in the Referee's Report, the Referee specifically invited pre-petition counsel for the Debtor to participate in the process and counsel specifically declined. Following the Referee's examination, on notice, and with an opportunity for Debtor to be heard, the Referee awarded the fees as set forth in the Referee's Report. At no time during this process did Debtor raise the issue of lack of notice of default, acceleration or imposition of the default interest rate.

Debtor cannot now, over four years after commencement of the state court action, complain before this Court about any alleged defects in notice or imposition of the default interest rate. Debtor has clearly and unequivocally waived such arguments, and the Supreme

Court's decision, as well as the computations contained in the Referee's Report, must remain in effect.  Debtor is not entitled to a second bite at the apple.

## POINT IV

**THE REFEREE'S REPORT MUST BE GIVEN EFFECT BY THE
BANKRUPTCY COURT DESPITE THE FACT THAT IT HAS
NOT BEEN CONFIRMED BY THE STATE COURT,
OR, IN THE ALTERNATIVE, STAY RELIEF SHOULD BE GRANTED
TO THE GREENE FAMILY TO PROCEED WITH THE MOTION IN
THE STATE COURT TO CONFIRM THE REFEREE'S REPORT**

**A.    The Bankruptcy Court Must Give Effect to the Referee's Report**

Even if collateral estoppel and res judicata do not apply to the Referee's Report by virtue
of the fact that it has not been confirmed by the state court, and if this Court further declines to
apply the doctrine of waiver to the Referee's Report, the Referee's Report must, nevertheless, be
given effect by this Court.   New York state court referees have an expertise in calculating
amounts due on Mortgages, and their calculations should not be affected by bankruptcy court
calculations, nor can referees be bound by bankruptcy court calculations.

While a bankruptcy court has the authority to determine whether a claim is allowable in
bankruptcy, the bankruptcy court has no authority to determine the amount of the underlying
debt in a state court foreclosure action. In re Five Boroughs Mortg. Co., Inc., 176 B.R. 708, 713
(Bankr.E.D.N.Y. 1995).

> [T]he Bankruptcy Code does not empower the bankruptcy judge to
> affect the amount of *debt* owed by the mortgagor/borrower to the
> Mortgagee/lender.   This is a computation performed according to
> the parties' loan agreement and Mortgage contract under state law
> by a state court or a referee appointed by the state court to compute
> the debt.  The debt must be computed to a sum certain. *This sum is
> not controlled by or subject to bankruptcy law.*

Id. (emphasis included in original).    "The bankruptcy court should play no part in the
computations by the referee before or after the foreclosure sale." Id.

There can be no question that the computation of the underlying Mortgage debt is the
province of the state court referee, and that the bankruptcy court should not, and cannot, interfere

with such computation.  The question becomes whether the Referee's computation must first be confirmed by the state court before being accepted as a claim in the bankruptcy court.  It is respectfully submitted that the Referee's Report need not be confirmed by the Supreme Court before this Court can accept the Referee's calculations as the claim amount.

In determinining whether to confirm a referee's report, "[c]ourts of New York generally 'will look with favor upon a Referee's report, inasmuch as the Referee, as a trier of fact, is considered to be in the best position to determine the issues presented.'" Jan S. v. Leonard S., 26 Misc. 3d 243, 249 (Sup. Ct., New York County 2009) (quoting Namer v. 152-54-56 W. 15th St. Realty Corp., 108 A.2d 705, 706 (1st Dept. 1985), quoting Matter of Holy Spirit Assn. for Unification of World Christianity v. Tax Commn. of the City of New York, 81 A.D.2d 64 (1st Dept. 1997), rev'd. on facts, 55 N.Y. 2d 512 (1982)).  "'It is well settled that the report of a Special Referee shall be confirmed whenever the findings contained therein are supported by the record and the Special Referee has clearly defined the issues and resolved matters of credibility.'" Id. at 249-50 (quoting Nager v. Panadis, 238 A.D.2d 135, 135-36 (1st Dept. 1997)).

Here, the Referee's determinations were nothing more than mathematical computations; issues of credibility were not involved.  The Referee's Report clearly shows the Referee's detailed calculations, as well as indicates the documents and evidence considered in awarding default interest, legal fees and disbursements.  Further, the Referee's Report specifically details his efforts to invite the participation of counsel for Debtor, including a telephone conversation during the hearing in which Debtor's counsel advised the Referee that he did not intend to appear or participate.

Given the facts that the Referee simply performed mathematical computations supported by the record and that he afforded Debtor a fair hearing, the Supreme Court undoubtedly would

have confirmed the Referee's Report if not for the bankruptcy filing. Accordingly, this Court should allow the POC, which reflects the calculations performed by the Referee as to the amount of principal balance, interest, default interest, late fees and disbursements, as well as a determination as to the entitlement to and amount of attorneys' fees.

**B.**    **In the Alternative, the Greene Family Must be Granted Stay Relief**

Following the issuance of the Referee's Report, the Greene Family filed the Motion to Confirm. Prior to the hearing on the Motion to Confirm, Debtor filed its voluntary petition. If the Court determines that it cannot accept the Referee's Report without it having been confirmed, then the Court should grant stay relief to the Greene Family to proceed in the Supreme Court on the Motion to Confirm.

> The factors that courts consider in deciding whether to lift the automatic stay include (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court. *See In re Mac Donald,* 755 F.2d at 717; *In re Holtkamp,* 669 F.2d 505, 508-09 (7th Cir.1982); *In re Revco D.S., Inc.,* 99 B.R. 768, 776-77 (N.D.Ohio 1989); *In re Pro Football Weekly, Inc.,* 60 B.R. 824, 826-27 (N.D.Ill.1986); *Broadhurst v. Steamtronics Corp.,* 48 B.R. 801, 802-03 (D.Conn.1985). While Congress intended the automatic stay to have broad application, the legislative history to section 362 clearly indicates Congress' recognition that the stay should be lifted in appropriate circumstances. The Senate Report accompanying the Bankruptcy Reform Act of 1978 stated that:
>
> > [I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

> S.Rep. No. 989, 95th Cong., 2d Sess. 50 (1978), *reprinted in* 1978
> U.S.C.C.A.N. 5787, 5836; *see also* 2 *Collier on Bankruptcy* §
> 362.07[3], at 362-71. (15th ed. 1991) ("the liquidation of a claim
> may be more conveniently and speedily determined in another
> forum").

In re Robbins, 964 F.2d 342, 345 (4th Cir. 1992), as amended (May 27, 1992).

Here, all of the factors involved in deciding whether to lift the automatic stay to allow the

Supreme Court to confirm the Referee's Report weigh heavily in favor of lifting the stay. First,

as argued in Point IVA, *supra*, the computation of the amounts due pursuant to the Mortgage and

Note are clearly within the expertise of the Referee and the Supreme Court. In fact, the

bankruptcy court has no authority to make such determinations. Second, lifting the stay to allow

confirmation of the Referee's Report will promote judicial economy; failure to lift the stay and

force this Court to recalculate amounts due which have already been calculated by the Referee

would result in duplicative, time-consuming and unnecessary litigation in this Court. Third,

there is no concern regarding enforcement because even if the stay is vacated, this Court retains

exclusive jurisdiction to approve distribution on account of the claim.

The Supreme Court is obviously the most appropriate forum to decide state law issues

regarding the Mortgage, Note and appropriate computations. The bankruptcy court should not

be burdened with such matters which have essentially already been decided. Accordingly, if this

Court will not allow the Greene Family's claim without confirmation of the Referee's Report,

then the Greene Family should be granted stay relief to obtain such confirmation.

Alternatively, this Court can determine, under the ministerial acts exception to the

automatic stay, that the Green Family is authorized to seek confirmation of the Referee's Report

without stay relief because no meaningful exercise of discretion is necessary for the Supreme

Court to confirm the Referee's Report. "Ministerial acts, even if undertaken in a state judicial

proceeding subsequent to a bankruptcy filing, do not fall within the proscription of the automatic stay[.]"  In re Soares, 107 F.3d 969, 973-74 (1st Cir. 1997).  Here, because the Referee has already performed all of the mathematical calculations upon the direction of the Supreme Court, the Supreme Court would simply need to perform the ministerial act of entering an Order confirming those calculations, which would not require relief from the automatic stay.

## POINT V

## IF THE COURT FINDS THAT IT HAS JURISDICTION TO ENTERTAIN DEBTOR'S OBJECTION, AND THAT CONSIDERATION OF THE ISSUES ARE NOT PRECLUDED BY ROOKER-FELDMAN, RES JUDICATA, COLLATERAL ESTOPPEL OR WAIVER, THEN THE RELIEF SOUGHT BY DEBTOR <u>MUST BE DENIED ON THE MERITS</u>

The Objection challenges the POC based upon substantive arguments that could have been raised in the Foreclosure Action. Specifically, while the Debtor concedes that it owes $3,924,645.93 in unpaid principal, $320,415.11 in advances for real estate taxes and insurance, and $21,258.50 in unpaid interest for September 2010, the Debtor argues that the Greene Family is not entitled to default interest and late charges[2] because the default and acceleration were not properly noticed or declared. The Debtor further objects to the Greene Family's claim for legal fees in the amount of $240,091.66. The Bankruptcy Court should deny the Objection because the arguments raised therein are either red herrings, or are incorrect as a matter of fact or law.

First and foremost, the parties agreed in writing as to the consequences should the Debtor default on its payment obligations to the Greene Family. Specifically, the parties agreed that if the Debtor defaulted on its payment obligations, it would be subjected to paying a higher interest rate, late fees and attorneys' fees. In the Objection, the Debtor acknowledges the fact that New York courts will enforce a default interest rate contained in a contract "even if the rate strikes the Court as being high." <u>See</u> Objection, p. 10 (citing <u>In re Northeast Industrial Development Corporation</u>, 513 B.R. 825, 845 (Bankr. S.D.N.Y. 2014) and <u>In re 785 Partners LLC</u>, 470 B. R. 126, 133 (Bankr. S.D.N.Y. 2012)).

---

[2] The Debtor contends that the Greene Family is not entitled to default rate interest for the period October 1, 2010 through April 1, 2013 in the amount of $1,772,864.32, late charges for the period October 1, 2010 through April 1, 2013 in the amount of $219,908.21, and additional default rate interest for the period April 1, 2013 through the Petition Date (November 12, 2013) in the amount of $427,732.64.

As stated in the Objection, the Debtor does not challenge the Greene Family's entitlement to default interest "on questions of fundamental fairness, *per se*, but on the basis that the purported default and acceleration was not properly noticed or declared." See Objection, p. 10. Although somewhat unclear in the Objection, the Debtor seemingly makes this same argument with regard to late charges. The Debtor further argues that the Greene Family is not entitled to both default interest and late charges, but concedes that "if default interest is eliminated, the Debtor recognizes the Greene Family's entitlement to late charges." See Objection, p. 13. Finally, Debtor argues that the Greene Family is not entitled to attorneys' fees.

## A.    The Notice of Default Was Proper and Sufficient

In order to avoid its contractual obligation to pay pre-petition default rate interest, the Debtor first takes issue with the Notice of Default, claiming that it was misaddressed and, as a result, it did not receive proper notice of default. The Mortgage provides that notices must be sent to "Mortgagor and Principals at Mortgagor's address as it then appears in the Mortgagee's records[.]" While the Notice of Default was not addressed to the principals, it was sent to the Debtor's property manager, (who is an authorized agent of Debtor under principles of agency law), as well as to the Debtor's address as listed in both the Note and Mortgage, *i.e.*, c/o Leo Salzman. The Greene Family also personally spoke with Debtor's clerk, agent and principal, as well as emailed the Notice of Default to Debtor's clerk. Critically, nowhere does the Debtor contend that it did not have actual notice.

The Debtor's argument of improper notice is primarily based upon a mere technicality, namely, the failure to strictly comply with the notice provisions in the Note and Mortgage. New York courts have recognized that "strict compliance with contractual notice provisions need not be enforced where the adversary party does not claim the absence of actual notice or prejudice by

the deviation[.]"  Fortune Limousine Service, Inc. v. Nextel Communications, appeal denied, 8 N.Y. 3d 816 (C.A.N.Y. 2007), 35 A.D.3d 350, 353 (2d Dept. 2006).  See also, Dellicarri v. Hirschfeld, 210 A.D.2d 584, 585 (3d Dept. 1994) ("Nor are we persuaded by defendants' contention that Dellicarri's letter. . .was without effect because it was not sent by registered or certified mail.  Strict compliance with the contract's notice provisions was not required, for defendants do not claim that they did not receive actual notice or that they were in any way prejudiced as a result of this minimal deviation."); Suarez v. Ingalis, 282 A.D.2d 599 (2d Dept. 2001).

Banco Popular North America v. 335-345 Green LLC, 34 Misc.3d 1216(A)(Sup.Ct., Kings County, 2012), addressed a contention of improper notice in a mortgage foreclosure action.  The mortgagor/defendants in Banco Popular argued that the notice of default was not addressed to the entities listed in the Mortgage, but instead was addressed to defendants' attorneys.  Id. at *5.  The Court found "[t]he Defendants' argument of improper notice of default...unavailing[,]" as the plaintiff had substantially complied with the notice of default provision as the defendants and their attorneys had actual notice of the default, were afforded an opportunity to cure, and the notice otherwise complied with the terms of the Mortgages.  Id. The Court found it significant that the defendants did not claim the absence of actual notice or prejudice.  Id.

Here, again, the Debtor never claims that it did not receive actual notice.  Furthermore, the Notice of Default clearly indicates that the Debtor is in default and subject to an action in foreclosure.  The fact that the Debtor's attorney, Leo Salzman, whose address was listed as the Debtor's address on the Note and Mortgage, and the fact that Debtor's representatives received

notice results in effective notice of default; strict adherence to the contractual provisions need not be enforced. The Debtor's attempt to argue otherwise is simply a red herring.

**B.**    **Even if the Notice of Default Did Not Accelerate the Loan, the Complaint Declared an Acceleration**

The Greene Family maintains that the express terms of the Note and Mortgage do not require explicit notice of acceleration in order to accelerate (see ¶10 of the Note). Nonetheless, New York case law is abundantly clear that the act of filing a foreclosure complaint is an exercise and declaration of the option to accelerate a mortgage. Logue v. Young, 94 A.D.2d 827, 827 (3d Dept. 1983) ("While it was necessary for plaintiff to manifest an optional election, this was accomplished by the service of the complaint wherein it clearly set forth an election to accelerate the mortgage debt."); see also, City Streets Realty Corp. v. Jan Jay Const. Enterprises Corp., 88 A.D.2d 558 (1982) ("the mere filing of a summons and complaint with notice of pendency is sufficient indication of the intent to accelerate the mortgage."); Charter One Bank, FSB v. Leone, 45 A.D.3d 958, 958 (2007) ("plaintiff's act of commencing the action and the filing of a lis pendens constitutes a valid election to accelerate the maturity of the unpaid principal balance and accrued interest[.]").

In Albertina Realty Co. v. Rosbro Realty Corporation, the Court noted that the mortgage agreement did not specify what the holder of the mortgage must do to evidence its election to declare the entire amount of the mortgage debt due, but held:

> It is unnecessary to decide just what a holder of a mortgage must do to exercise the right of election, under an acceleration clause. We are satisfied...that the unequivocal overt act of the plaintiff in filing the summons and verified complaint and lis pendens constituted a valid election.

Albertina Realty Co. v. Rosbro Realty Corp., 258 N.Y. 472, 476, 180 N.E. 176, 177 (1932).

Here, paragraph 10 of the Note provides, in pertinent part:

> The Lender may declare the unpaid principal, interest, fees and other amounts and charges specified under this Note due immediately upon the occurrence of an Event of Default, as defined below. ... Each of the following shall constitute an Event of Default: ...(b) failure of the Borrower to make any payment due hereunder within five days after written notice of default given by the Lender...

There is no dispute that the Notice of Default clearly provided written notice to the Debtor that it was in default, and that Debtor never cured the default.

Furthermore, Paragraph 17 of the First Cause of Action of the Foreclosure Complaint alleges that "[b]y reason of such defaults, the plaintiffs have elected and hereby elect to accelerate payment of the entire principal balance remaining unpaid on the Note and the Purchase Money Mortgage." The Greene Family also filed a contemporaneous Notice of Pendency.

The Foreclosure Complaint was filed on January 19, 2011, a mere four (4) months after the allegedly defective Notice of Default was issued. The Foreclosure Complaint was served on the Debtor almost immediately thereafter. Even if the Notice of Default cannot be viewed as an acceleration of the Mortgage, the filing of the Foreclosure Complaint and Notice of Pendency clearly manifest an unequivocal election to accelerate the mortgage debt, and declaration of such acceleration.

Given the fact that the filing of the Foreclosure Complaint was proper notice of acceleration, Debtor's reliance upon In re Sheba Realty Corp. 2014 WL 1373094 (Bankr. E.D.N.Y 2014) is inapposite. Debtor relies upon In re Sheba Realty Corp. for the proposition that, without sufficient evidence of proper acceleration and failing a proper declaration of default with confirming notice, the mortgagee is not entitled to default interest and attorneys' fees. Even if Debtor's assessment of In re Sheba Realty Corp. were accurate, and if Debtor could argue that

the Notice of Default was not properly served, Debtor cannot dispute that it received proper notice of default and acceleration upon the filing of the Foreclosure Complaint. Accordingly, the Greene Family is entitled to default interest at least as of the time of the filing of the Foreclosure Complaint.

### C.    The Greene Family is Entitled to Both Pre-Petition Default Interest and Late Charges

The Debtor argues that the Greene Family is not entitled to both default interest and late charges, citing In re 785 Partners, LLC 47 B.R. 126 (Bankr. S.D.N.Y. 2012). Debtor does not distinguish between such fees pre-petition and post-petition. While Debtor does not make its argument clear, it appears that Debtor is arguing that the Greene Family is not entitled to both default interest and late charges either pre-petition or post-petition.

To the extent that Debtor is arguing that the Greene Family is not entitled to both default interest and late charges pre-petition, In re 785 Partners is inapplicable. The analysis and holding in In re 785 Partners that a mortgagee is not entitled to both default interest and late charges is based upon § 506(b), and addresses the post-petition claims of oversecured creditors.

As to a mortgagee's entitlement to both default interest and late fees pre-petition, this Court must look to New York state law, just as it must look to applicable state law in determining the allowability of the rate of default interest. See id. at 133 ("Section 506(b) does not apply to a creditor's claim for pre-petition interest, a claim that must instead be determined under state law.") As with the rate of default interest, the bankruptcy court must defer to the parties' contract in determining their rights thereunder, and "cannot rewrite the parties' bargain based on its own notions of fairness and equity." Id. at 132. "The requirement that the agreement must be enforced in accordance with its terms has even greater force in the context of real property transactions, where commercial certainty is a paramount concern and where, as

here, the instrument was negotiated between sophisticated, counseled business people negotiating at arm's length.'" Id. (citing Wallace v. 600 Partners Co., 86 N.Y.2d 543, 634 N.Y.S.2d 669, 658 N.E.2d 715, 717 (1995)). "The Debtor's appeal to equitable considerations has no place under New York law." Id.

Here, the Note clearly provides for late charges in addition to default interest. Furthermore, the Mortgage acknowledges that

> ...(3) some additional payments, such as interest at the Default Rate and late charges, are deemed by the Lender as compensation to the Lender for the increased risk associated with this Loan not being timely repaid and (4) the additional payments represent reasonable estimates of the cost to the Lender in allocating its resources (both personnel and financial) to the ongoing review, monitoring, administration and collection of the Loan...."

Not only should the bankruptcy court honor the bargain between the parties with regard to both pre-petition interest and late charges, but New York courts typically award default interest in addition to late charges. See, e.g., Nussdorf v. Kakach, 22 Misc.3d 1111(A),*9 (2009); Hoffinger Industries, Inc. v. Alabama Ave. Realty, Inc., 68 A.D.3d 818, 819 (2009); Marathon Structured Finance Fund L.P. v. Pektor, 2010 WL 2102628, *1.

Putting aside issues of collateral estoppel, the fact that the Referee in this case awarded both default interest and late charges is further evidence of the appropriate ruling under New York state law. Accordingly, Debtor is entitled to both pre-petition default interest and late charges.[3]

**D.   The Greene Family is Entitled to Pre-Petition Legal Fees**

---

[3] The POC includes default interest, late fees and attorneys' fees through April 28, 2013, as determined by the Referee. The POC also includes addtional default interest from April 28, 2013 through the Petition Date, but does not include late fees from April 28, 2013 through the Petition Date. The Greene Family, accordingly, requests that it be permitted to amend its POC to include such late charges, as well as additional attorneys' fees.

Debtor also argues that the Greene Family's legal fees are objectionable because they are not reasonable under the provisions of 11 U.S.C. § 506(b).  Again, it is unclear as to whether Debtor is arguing that the Greene Family is not entitled to pre-petition legal fees, as §506(b) only applies to post-petition fees.  As with the award of late charges, to the extent that Debtor is arguing that the Greene Family is not entitled to pre-petition attorneys' fees, this Court must look to state law.  There can be no dispute that attorneys' fees are permissible under New York state law.  Both ¶ 16 of the Note and ¶ 25 of the Mortgage provide for an award of reasonable attorneys' fees.  Accordingly, the Greene Family is entitled to pre-petition attorneys' fees.

## POINT VI

### THIS COURT SHOULD GRANT THE CROSS-MOTION TO DETERMINE POST-PETITION INTEREST, COSTS AND ATTORNEYS' FEES

As noted in Point V, *supra*, Debtor does not argue that the default interest *rate* is impermissible with regard to pre-petition interest. Rather, with regard to the imposition of pre-petition default interest, Debtor simply argues that default interest is not recoverable at all due to the allegedly improper notice of default and acceleration. It is only with regard to post-petition interest that Debtor argues that the default interest rate is impermissible for reasons other than alleged improper notice of default and acceleration.

Debtor concedes that the Greene Family is oversecured, suggesting that they had paid down the Fifteen Million Dollars ($15,000,000) initial debt to under Four Million Dollars ($4,000,000). In addition, the Debtor's Schedules recite the value of the property at $15,000,000.

Accordingly, pursuant to § 506(b), the Greene Family is entitled to interest, on a post-petition basis at the default rate, plus costs and attorneys' fees which are expressly authorized under the Note and Mortgage. These attorneys' fees are, of course, subject to the Court's view of reasonableness under the statute.

In a footnote, Debtor points out that although a higher default interest rate is permissible under New York law and can govern post-petition, the rate may not be so disproportionate to the non-default rate that it acts as a penalty. See Objection, p. 9, FN 1. Debtor argues that the eighteen percent (18%) rate applicable here is an unenforceable penalty. The Debtor is incorrect as a matter of law.

Section 506(b) governs the allowance of post-petition interest as part of a secured claim. Generally speaking, post-petition interest will be allowed as part of a claim as long as the claim

is "oversecured," meaning that the relevant value of the collateral exceeds the amount of the claim after taking into account any amounts chargeable to the collateral under § 506(c). See e.g., Baybank-Middlesex v. Ralar Distributors, Inc., 69 F.3d 1200, 1202 (1st Cir. 1995). If a claim is oversecured, § 506(b) provides that the holder may add post-petition interest to the amount of its claim to the extent of the oversecurity. See eg, In re Parr Meadows Racing Ass'n, Inc., 880 F.2d 1540, 1549 (2d Cir. 1989), cert. denied, Suffolk County Treasurer v. Barr, 493 U.S. 1058 (1990), cert. denied, 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990); In re Brentwood Outpatient, Ltd., cert. denied, Williamson County v. Bondholder Committee, 574 U.S. 1096 (1995), 43 F.3d 256 (6th Cir. 1994), cert. denied, 514 U.S. 1096, 115 S.Ct. 1824, 131 L.Ed.2d 745 (1995).

The great majority of courts which have considered this issue have concluded that post-petition interest should be computed at the rate provided in the agreement under which the claim arose -- the so called "contract rate" of interest. In re 785 Partners LLC, 470 B.R. at 134; In re Terry Ltd. P'ship, 27 F.3d 241 (7th Cir.) cert. denied, Favex Holdings, N.V. v. Equitable Life Ins. Co. of Iowa, 513 U.S. 948 (1994), cert. denied, 513 U.S. 948, 115 S.Ct. 360, 130 L.Ed.2d 313 (1994); In re 400 Walnut Assocs., L.P., 473 B.R. 603 (E.D. Pa. 2012). While bankruptcy courts have the equitable power to modify the contract rate based on notions of equity, such power should be exercised sparingly and limited to situations where the secured creditor is guilty of misconduct, the application of the *contractual* interest rate would harm the unsecured creditors or impair the debtor's fresh start, or the contractual interest rate constitutes a penalty. Urban Communicators v. PCS Ltd. P'ship v. Gabriel Capital, L.P.,394 B.R. 325, 338 (S.D.N.Y. 2008); In re General Growth Props., Inc., 451 B.R. 323, 328 (Bankr. S.D.N.Y. 2011); In re P.G. Realty Co., 220 B.R. 773, 780 (Bankr.E.D.N.Y.1998). Debtor bears the burden of rebutting the presumption that the contract rate of interest applies post-petition. In re 785 Partners LLC, 470

B.R. at 134; In re Southland Corp., 160 F.3d 1054, 1059–60 (5th Cir.1998); Urban

Communicators, 394 B.R. at 338; In re Vest Assocs., 217 B.R. 696, 702 (Bankr. S.D.N.Y. 1998).

Here, Debtor has failed to sustain this burden. There is no evidence of misconduct by the

Greene Family. In addition, Debtor has failed to offer proof that the application of the default

rate will harm the unsecured creditors or impair Debtor's fresh start. Debtor's argument that the

eighteen percent (18%) interest rate consititutes a penalty is not in accordance with New York

law.

"The fact that federal law determines the interest rate to be allowed on an oversecured

claim under Code section 506(b) does not make state law irrelevant. . .State law is...relevant to

determine the interest rate allowed outside of bankruptcy." In re Route One West Windsor Ltd.

Partnership, 225 B.R. 76, 87 (Bankr.D.N.J. 1998) (applying New York law to uphold 15.125%

default interest rate). As noted by the Court in In re Route One West Windsor, Ltd., "New York

courts have held that default interest rates are not penalties because they are compensation for

the increased cost of collection." Id.

> Parties use default interest rates as a means to compensate a lender
> for the administrative expenses and inconvenience in monitoring
> untimely payments. Because the costs incurred in performing this
> task will vary from case to case, the increased interest rate is a
> compromise by the lender and the borrower in recognition of the
> fact that attempting to quantify the exact dollar amount of the
> lender's injury would be impractical.

In re Vest Associates, 217 B.R. 696, 701 (Bankr.S.D.N.Y. 1998); see also, In re Route One West

Windsor, Ltd., 225 B.R. at 89. Similarly, the Second Circuit has explained:

> A variable interest provision in event of a stated default such as we
> have here is not a penalty, nor should it be considered
> unconscionable...It can be beneficial to a debtor in that it may
> enable him to obtain money at a lower rate of interest than he
> could otherwise obtain it, for if a creditor had to anticipate a
> possible loss in the value of the loan due to his debtor's bankruptcy

> or reorganization, he would need to exact a higher uniform interest
> rate for the full life of the loan. The debtor has the benefit of the
> lower rate until the crucial event occurs; he need not pay a higher
> rate throughout the life of the loan.

Ruskin v. Griffiths, 269 F.2d 827, 832 (2d Cir. 1959), cert. denied, 361 U.S. 947 (1960).

New York state courts will generally uphold a contract rate of interest, "so long as [the] interest rate is not usurious or does not constitute a penalty[.]"  Emery v. Fishmarket Inn of Granite Springs, Inc., 173 A.D.2d 765, 766 (1991).  In Emery, the court confirmed a referee's report fixing default interest at 18%, where the mortgage entitled the mortgagee to collect upon default "the highest interest permitted under law[,]" the court noting that the highest rate permitted under New York law was 25% per annum.  Id.  Similarly, in Emigrant Funding Corp. v. 7021 LLC, 25 Misc.3d 1220(A), *4 (2009), the Court upheld a provision in a mortgage note fixing interest at the rate of 24% per annum after default, finding the provision valid and enforceable, despite defendant's argument that the 24% rate constituted a penalty and was void as against public policy.

Here, Debtor agreed to a default rate of interest of 18%, and specifically acknowledged in both ¶ 19 of the Note and ¶ 35 of the Mortgage that

> …(3) some additional payments, such as interest at the Default
> Rate. . .are deemed by the Lender as compensation to the Lender
> for the increased risk associated with this Loan not being timely
> repaid and (4) the additional payments represent reasonable
> estimates of the cost to the Lender in allocating its resources (both
> personnel and financial) to the ongoing review, monitoring,
> administration and collection of the Loan...."

Clearly, the parties bargained for the 6.5% nondefault rate and 18% default rate in recognition of the risks and potential costs to the Greene Family in the event of default.  Contrary to Debtor's contention, the 18% interest rate is not so disproportionate to the nondefault rate (which may have intentionally been low) that it should offend this Court's notions of justice.

Accordingly, this Court should determine that the Claim of the Greene Family is oversecured and that therefore, pursuant to 11 U.S.C. § 506(b), the Post-Petition Claim is entitled to interest at the default rate of 18% together with costs and attorneys' fees to be determined at a further hearing.

## CONCLUSION

Based on the above, the Bankruptcy Court should deny the Objection in its entirety and grant the relief sought through the Greene Family's Cross-Motion as well as any relief the Court deems just.

RABINOWITZ, LUBETKIN & TULLY, LLC

By: _____
    Jeffrey A. Cooper

DATED:  May 27, 2015

F:\Client_Files\A-M\Greene, Hal J. Living Trust\Memorandum of Law.doc

42