UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------x

In re:                                            Chapter 11

KEEN EQUITIES, LLC,                               Case No. 13-46782 (NHL)

                        Debtor.

--------------------------------------------------------------x

## DEBTOR'S REPLY MEMORANDUM OF LAW IN RESPONSE TO (i) THE OPPOSITION OF THE GREENE FAMILY TO THE DEBTOR'S OBJECTION TO THE GREENE FAMILY'S CLAIM AND (ii) THE CROSS MOTION FILED BY THE GREENE FAMILY FOR RELIEF FROM THE AUTOMATIC STAY AND TO FIX THE AMOUNT OF THE POST-PETITION CLAIM

GOLDBERG WEPRIN
FINKEL GOLDSTEIN LLP
*Attorneys for the Debtor*
1501 Broadway, 22nd Floor
New York, New York 10036
(212) 221-5700

Kevin J. Nash, Esq.
J. Ted Donovan, Esq.

# TABLE OF CONTENTS

**Page No.**

Table Contents ........................................................................................................... i

Table of Authorities .................................................................................................. ii

Preliminary Statement ............................................................................................... 1

Statement of Facts ..................................................................................................... 3

Argument .................................................................................................................... 6

A. The Granting of Summary Judgment in the State Court Does Not
   Preclude this Court from Considering the Debtor's Objections to
   Allowance of Default Rate Interest, Late Charges and Legal Fees ................... 6

   1. *Res Judicata* Considerations are Inapplicable to the Claim
      Objection ...................................................................................................... 7

   2. *Rooker-Feldman* Does Not Apply to this Contested Matter ................... 9

   3. Collateral Estoppel also Does Not Apply to this Contested Matter .... 11

   4. The Debtor Did Not Waive its Right to Object to the Claim ............. 11

B. The Greene Family's Claim is Overstated and Must be Reduced ................... 12

   1. The Greene Family is Not Entitled to Default Rate Interest, as
      There Was Never an Event of Default under the Note and
      Mortgage ..................................................................................................... 12

   2. There is no Basis for Allowance of Post-Petition Interest ................... 17

   3. The Greene Family is Entitled to Either Late Charges or Default
      Interest, But Not Both ............................................................................... 17

   4. The Greene Family Has Completely Failed to Meet its Burden
      of Establishing Entitlement to Legal Fees ............................................ 18

C. This Court is Not Bound by the Unconfirmed Referee's Report .................... 21

D. That Portion of the Cross Motion Seeking Relief from the Automatic
   Stay Should be Denied .......................................................................................... 22

Conclusion ............................................................................................................... 31

# TABLE OF AUTHORITIES

## Cases

Page No.

Albertina Realty Co. v. Posbro Realty Corp., 258 N.Y. 472 (1932) ........................... 15-16

Burke v. Crosson, 85 N.Y.2d 10, 17 (1995) ........................................................................8

Charter One Bank, FSB v. Leone, 45 A.D.3d 958 (3rd Dep't 2007) .................................16

City Streets Realty Corp. v. Jan Jay Ent. Corp., 88 A.D.2d 558 (1st Dep't 1982).............16

Dale v. Industrial Ceramics, Inc., 571 N.Y.S.2d 185 (Sup.Ct. N.Y. Co. 1991) ..........14, 15

Exxon Mobil Corp. v. Saudi Basic Inds. Corp., 544 U.S. 280, 125 S.Ct. 1517 (2005).......9

Federacion de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.,
410 F.3d 17 (1st Cir. 2005)................................................................................................10

Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77 (2d Cir. 2005) .......................9, 10

In re 56 Walker LLC, 2014 WL 1228835 (Bankr. S.D.N.Y. March 25, 2015)...................8

In re 785 Partners LLC, 470 B.R. 126 (Bankr. S.D.N.Y. 2012).......................................17

In re Bally Total Fitness of Greater New York, 411 B.R. 142 (S.D.N.Y. 2009)...............23

In re Chaitan, 517 B.R. 419, 427 (Bankr. E.D.N.Y. 2014)...........................................7, 11

In re Danise, 112 B.R. 492 (Bankr. D. Conn. 1990).........................................................18

In re Dreier, 438 B.R. 449, 456 (Bankr. S.D.N.Y. 2010) ................................27, 28, 29, 30

In re Five Boroughs Mortg. Co., Inc., 176 B.R. 708 (Bankr. E.D.N.Y. 1995).................21

In re Henderson, 352 B.R. 439 (Bankr. N.D.Texas 2006).................................................28

In re Marcia Campbell, 513 B.R. 846 (Bankr. S.D.N.Y. 2014) ................................... 16-17

In re Marketxt Holdings Corp., 428 B.R. 579 (S.D.N.Y. 2010)........................................26

In re Mego Intl, Inc., 28 B.R. 324 (Bankr. S.D.N.Y. 1983) .............................................27

In re Newman, 196 B.R. 700 (Bankr. S.D.N.Y. 1996)......................................................26

**Page No.**

In re Northwest Airlines Corp., No. 2007 WL 3376895 (Bankr. S.D.N.Y.
Nov. 9, 2007) ........................................................................................................... 18-19

In re Sheba Realty Corp., 2014 WL 1373094 (Bankr. E.D.N.Y. 2014) .......................2, 16

In re Solid Rock Dev. Corp., Inc., 481 B.R. 221 (Bankr. N.D. Ga. 2012) ........................21

In re Sonnax Industries, Inc., 907 F.2d 1280 (2d Cir. 1990) ........................... 22-23, 25, 28

In re St. Casimir Development Corp., 358 B.R. 24 (S.D.N.Y. 2007)...........................14, 15

In re Vest Associates, 217 B.R. 696 (Bankr. S.D.N.Y. 1998)...........................................17

Lipton v. Specter, 96 A.D.2d 549 (2d Dep't 1983) ...........................................................20

Logue v. Young, 94 A.D.2d 827 (3d Dep't 1983)..............................................................16

Long Island Sav. Bank of Centereach, F.S.B. v. Denkensohn, 222 A.D.2d 659
(2d Dep't 1995)....................................................................................................................8

Mfrs. & Traders Trust Co. v. Korngold, 618 N. Y.S.2d 744, 745
(Sup.Ct. Rockland Co. 1994).............................................................................................14

Onewest Bank FSB v. Berry, 901 N.Y.S.2d 908 (Sup.Ct. Suffolk Co. 2009) ............ 11-12

PNL Phoenix, LLC v. Janton Industries Inc. 2015 WL 1632449
(Sup.Ct. Kings Co. 2015)...................................................................................................19

Robbins v. Robbins, 964 F.2d 342 (4th Cir. 1992).............................................................26

Snyder v. U.S., 1995 WL 724529 (E.D.N.Y. July, 26,.......................................................12

Teachers Ins. & Annuity Ass'n of Am. v. Butler, 803 F.2d 61 (2nd Cir. 1986)...................8

Vardy Holding Co. v. Metric Resales, Inc., 131 A.D.2d 564 (2d Dep't 1987) .................20

## Congressional Record

**Page No.**

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 343-44 (1977)..............................................25

S Rep. No. 95-989, 95th Cong., 2d Sess. 52 (1978) .........................................................25

# Statutes and Rules

Page No.

11 U.S.C. § 362(d)(3) .........................................................................................................17

11 U.S.C. § 506(b) ........................................................................................................18, 24

28 U.S.C. § 157(b)(2)(A), (B), (K), (L) and (O) ..............................................................25

CPLR 3015(a) .............................................................................................................11, 12

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re:                                          Chapter 11

KEEN EQUITIES, LLC,                             Case No. 13-46782 (NHL)

                            Debtor.

-------------------------------------------------------------x

### DEBTOR'S REPLY MEMORANDUM OF LAW IN RESPONSE TO (i) THE OPPOSITION OF THE GREENE FAMILY TO THE DEBTOR'S OBJECTION TO THE GREENE FAMILY'S CLAIM AND (ii) THE CROSS MOTION FILED BY THE GREENE FAMILY FOR RELIEF FROM THE AUTOMATIC STAY AND TO FIX THE AMOUNT OF THE POST-PETITION CLAIM

The Reply Memorandum of Law is respectfully submitted by Keen Equities LLC

(the "Debtor"), in response to (a) the opposition filed by Hal J. Greene Living Trust, David A.

Greene, and Trust u/w M. Greene f/b/o Sabrina Greene (the "Greene Family") to the Debtor's

objection (the "Claim Objection") to various aspects of the claim (the "Claim") filed by the

Greene Family; and (b) the cross motion of the Greene Family seeking (i) relief from the

automatic stay and (ii) to allow post-petition interest, late charges and legal fees (the "Cross

Motion"). For purposes of this Reply Memorandum, terms not otherwise defined below shall

have the same meanings as set forth in the Claim Objection.

## I. PRELIMINARY STATEMENT

At issue are some $1,865,937.06 in disputed charges[1], the bulk of which represent

improper default rate interest, as well as late charges and legal fees, all as itemized in the Claim

---

[1] Pursuant to stipulation dated July 9, 2015 (ECF #108), after the Claim Objection was filed, the Debtor made an additional payment of $25,000 to be applied toward the principal indebtedness. The Debtor is also entitled to a credit for this payment.

Objection. The Debtor also objects to payment of any additional interest, late charges and legal fees for the post-petition period.

That portion of the Claim seeking default rate interest should be disallowed because the failure of the Greene Family to provide the required notice of default in compliance with the terms of the Mortgage and Note bars the claim for default rate interest in its entirety. In this respect, the case of In re Sheba Realty Corp., 2014 WL 1373094 (Bankr. E.D.N.Y. 2014) is directly on point, where the court held that default interest will not be permitted unless it can be established by a preponderance of the evidence that the mortgagee met all of the requirements of the underlying loan documents for the imposition of default rate interest.

The central argument of the Greene Family's opposition to the Debtor's Claim Objection is that the Debtor is precluded from challenging the Greene Family's entitlement to pre-petition default interest, legal fees and late charges, because the Greene Family contends these entitlements were resolved in the pre-bankruptcy foreclosure action. In fact, these issues were never actually addressed by the State Court judge, and in any event, were not subject to a final judgment, as the Referee's report still remains unconfirmed. Thus, the Greene Family never received an order confirming calculations, let alone a final judgment. Accordingly, the Greene Family's reliance on the doctrines of *Rooker-Feldman*, *res judicata*, collateral estoppel and waiver is unavailing.

In an obvious attempt at forum shopping, and despite prior stipulations, the Greene Family has filed a Cross Motion seeking to vacate the stay to permit them to seek confirmation of the Referee's report. The Cross Motion should be denied, as it is based on the erroneous assumption that the calculation of the debt is outside the jurisdiction of this Court, and therefore best left to the State Court. In fact, by filing its proof of claim and otherwise

2

consenting to this Court's jurisdiction, the Greene Family has placed the amount of the debt squarely before this Court, which routinely determines issues such as those presented here. Moreover, the Greene Family resolved an earlier motion for stay relief through a stipulation which provided for the adjudication of the Claim Objection in this Court.

That portion of the Cross Motion which seeks allowance of legal fees is so completely lacking in supporting documentation as to require its complete denial. Moreover, the scope of reimbursable legal fees as permitted in the underlying Note and Mortgage is limited and minimal, barring much of the fees sought under any circumstances.

## II. STATEMENT OF FACTS

The facts are set forth in the Claim Objection, as supplemented by the Declarations of William Lefkowitz and Joseph Strulovitch, principals of the Debtor, and Leo Salzman, Esq., former counsel for the pre-petition Debtor, which are filed herewith. The key point is that, under the terms of the Note and Mortgage, before the debt can be accelerated or default interest imposed, there must have been an "event of default". Events of default are identified in Paragraph "10" of the underlying Note and Paragraph 13 of the Mortgage. The sole default alleged by the Greene Family is the "Failure of the Borrower to make any payment due hereunder within five days after written notice of default given by the Lender . . . ." Copies of the Note and Mortgage are annexed to the Objection as Exhibits "B" and "C", respectively.

The notice provisions contain specific requirements, which are set forth in the Mortgage, with Paragraph 20 of the Mortgage, which states:

> No notice, request, consent, approval, waiver or other communication under this Mortgage or the Note shall be effective unless, but any communication shall be effective and shall be deemed to have been given, if the same is in writing and is mailed by certified mail, return receipt requested, postage prepaid, or by nationally recognized overnight courier, addressed:

(a) To Mortgagee and Principals at Mortgagor's address as it appears on Mortgagee's records . . . .

The address of the Debtor is listed in both the Note and Mortgage as "c/o Leo Salzman, 2116 Avenue J, Brooklyn, New York 12210".

The Greene Family alleges that a default in payment under the Note occurred on October 1, 2010, and that notice of the default was given by letter dated October 18, 2010 (the "October 18 Letter"), sent by regular mail to "Keen Equities c/o Samuel Weisner, Sound Around, 1600 63rd Street, Brooklyn, New York 11204," with a copy to "Leo Salzman, Esq., 2116 Avenue J, Brooklyn, NY 11210". A copy of the October 18 Letter is annexed to the Objection as Exhibit "D".

The plain language of the October 18 Letter does not indicate that (i) the mortgage debt would be, or is deemed, accelerated in the event the October 1, 2010 payment was not cured; or (ii) the Debtor would become responsible for the imposition of default interest after October 24, 2010. Moreover, it is undisputed that the October 18 Letter was initially sent by regular mail, and not by certified mail, return receipt requested or overnight delivery.

In the Certification submitted by Hal J. Greene in support of the Reply (the "Greene Certification"), Mr. Greene alleges that the October 18 Letter was sent a second time on October 27, 2010, this time by certified mail, return receipt requested, addressed to "Keen Equities c/o Sound Around, 1600 63rd Street, Brooklyn, New York 11204", and "Leo Salzman, 2116 Avenue J, Brooklyn, NY 11210". Exhibit "D" to the Greene Certification contains a copy of a return receipt signed by Yanky Kea Drat relating to the letter sent in care of Sound Around. No return receipt signed by Mr. Salzman has been produced.

4

There is no proof by the Greene Family of service of the Debtor at its correct address as stated in the Note and Mortgage (*i.e.* c/o Leo Salzman, 2116 Avenue J, Brooklyn, New York 12210), nor of separate service on both William Lefkowitz and Joseph Strulovitch at their correct address (*i.e.* c/o Leo Salzman, 2116 Avenue J, Brooklyn, New York 12210), as required under the Mortgage and Note.

As set forth in the Declarations of William Lefkowitz and Joseph Strulovitch, Sound Around is the business address of Samuel Weisner, a relative of one of the equity interest holders in the Debtor. Mr. Weiser collected funds from the Debtor's investors and paid the various bills each month, including the mortgage. Mr. Weisner was acting merely in an administrative capacity, and had no authority to accept service on the behalf of the Debtor. More importantly, at no time was Mr. Weiser ever named as an authorized agent of the Debtor, and no notices were ever sent by the Debtor changing its address to 1600 63rd Street, Brooklyn, New York.

As set forth in the Declaration of Leo Salzman filed herewith, Mr. Salzman has no record of being served with the October 18 Letter by either regular mail or certified mail.

Neither Mr. Lefkowitz, Mr. Strulovitch nor Mr. Salzman had actual knowledge of the purported notice of default until after the commencement of the foreclosure action in January 2011.

After the commencement of a foreclosure action, the State Court granted summary judgment in favor of the Greene Family, without ever directly addressing the issue of the defective notice. A Referee's report was issued, but was not confirmed or reduced to an order, let alone a judgment.

5

Following the Chapter 11 filing on November 12, 2013, the Debtor began making adequate protection payments, pursuant to stipulation with the Greene Family dated March 18, 2014 (ECF #32), as later amended on December 23, 2014 (ECF #82) (the "December 2014 Stipulation"), with the payments to be applied against post-petition interest.

The December 2014 Stipulation was executed in the context of resolving a motion for stay relief. There is no provision for the vacatur of the stay to permit the Referee's report to be confirmed. To the contrary, the December 2014 Stipulation specifically provides for the filing of the Claim Objection in this Court.

In a further consent Order dated February 19, 2015 (ECF #90) the parties agreed that the Debtor would file its Chapter 11 plan no later than September 15, 2015, with the exclusive period for the Debtor to confirm its plan extended to December 15, 2015. Thus, the plan will be filed and the confirmation process underway by the time of the hearing on the Claim Objection.

## III. ARGUMENT

### A.  The Granting of Summary Judgment in the State Court Does Not Preclude this Court from Considering the Debtor's Objections to Allowance of Default Rate Interest, Late Charges and Legal Fees

In their Opposition, the Greene Family contends that the Debtor is barred from contesting that portion of the Greene Family's Claim relating to default interest, late charges and legal fees, under the doctrines of *res judicata*, *Rooker-Feldman*, collateral estoppel and waiver. As explained in detail below, none of the doctrines are applicable to the instant Claim Objection, because the issues were not finally decided in the State Court foreclosure action.

6

## 1. *Res Judicata* Considerations are Inapplicable to the Claim Objection

The Greene Family relies upon the doctrine of *res judicata*, which precludes parties from re-litigating an action which was, or could have been raised in an earlier action, so long as that earlier action was finally decided on the merits. As this Court has previously explained:

> New York state courts apply res judicata liberally, taking a transactional approach, such that "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *O'Brien v. City of Syracuse,* 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981).

In re Chaitan, 517 B.R. 419, 427 (Bankr. E.D.N.Y. 2014).

The central question presented is thus whether the Decision and Order granting summary judgment entered in the New York Supreme Court acts as a "final conclusion" on the question of liability so as to require invocation of *res judicata* to preclude this Court from considering the amount of the Debtor's liability to the Greene Family in the context of the Debtor's Claim Objection. The answer to that question is no.

In this context, it is important to understand the procedural context of the entry of an order granting summary judgment in a foreclosure action. In fact, the order granting summary judgment is just the first step toward entry of a final judgment of foreclosure and sale. After the motion for summary judgment is granted, the state court must still determine the amount of the liability, almost always through the use of a referee to compute the debt, including interest, legal fees, late charges and related costs. The referee's report must then be confirmed, and a judgment of foreclosure and sale must be entered. Notably, the New York Court of Appeals has specifically held that the time to appeal does not run from granting of summary judgment, but rather from the entry of the judgment of sale, explaining that:

7

> the ... order granting plaintiffs summary judgment on their first cause of
> action and dismissing the others cannot be deemed final. Although all of
> the substantive issues between the parties were resolved, the order was
> facially nonfinal, since it left pending the assessment of attorneys' fees--a
> matter that plainly required further judicial action of a nonministerial
> nature.

Burke v. Crosson, 85 N.Y.2d 10, 17 (1995).

Similarly, in this case, although summary judgment was entered, there were still open issues concerning the amount of interest, legal fees and late charges remaining to be determined. Moreover, it is precisely at this stage of the case that the issues raised in the Objection would normally be litigated. *See. e.g.*, Long Island Sav. Bank of Centereach, F.S.B. v. Denkensohn, 222 A.D.2d 659 (2d Dep't 1995)("In any event '[a] dispute as to the exact amount owed by the mortgagor to the mortgagee may be resolved after a reference pursuant to RPAPL 1321, and the existence of such a dispute does not preclude the issuance of summary judgment directing the sale of the mortgaged property' (*Crest/Good Mfg. Co. v. Baumann*, 160 A.D.2d 831, 832, 554 N.Y.S.2d 264 [2d Dep't 1990])").

The Greene Family cites to In re 56 Walker LLC, 2014 WL 1228835 (Bankr. S.D.N.Y. March 25, 2015) as standing for the proposition that *res judicata* will be applied when the underlying decision would have been final but for the intervening bankruptcy filing. However, 56 Walker and the cases cited therein, including Teachers Ins. & Annuity Ass'n of Am. v. Butler, 803 F.2d 61, 66 (2nd Cir. 1986), are based on circumstances where final decision had been made by the court, and the only remaining matter was the ministerial act of entry of the judgment by the Clerk. Here, the Referee's report still needed to be confirmed, and then a judgment of foreclosure presented to and signed by the judge. These steps are far more than "merely ministerial".

8

Accordingly, the issues raised in the Objection are not barred by *res judicata*, as no final judgment has been entered resolving those specific issues.

## 2. *Rooker-Feldman* Does Not Apply to this Contested Matter

The non-finality of the State Court Decision and Order granting summary judgment also renders the *Rooker-Feldman* doctrine inapplicable to the Debtor's Objection to the amount of the Greene Family's claim. Under *Rooker-Feldman*, the federal courts, except for the Supreme Court, are barred from acting in an appellate capacity to review judgments entered in the state courts. In its most recent review of the doctrine, the Supreme Court explained the boundaries of its application as follows:

> [t]he *Rooker/Feldman* doctrine is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker–Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

Exxon Mobil Corp. v. Saudi Basic Inds. Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 1521 - 1522 (2005) (emphasis supplied).

Since that decision, the Second Circuit Court of Appeals has enunciated four factors to be considered when determining whether to apply *Rooker-Feldman* in a federal court action, including:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[ ]."[4] Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"— i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005).

In its Opposition, the Greene Family asserts that *Rooker-Feldman* applies to the instant case because of the entry of summary judgment against the Debtor, which was not appealed.

It must be noted that the Greene Family misstates the law with respect to *Rooker-Feldman*, because, unlike *res judicata*, there need not be a final judgment ending the entire case for *Rooker-Feldman* to be invoked. Rather, as explained by the Second Circuit in Hoblock, *supra.*, while *res judicata* turns on the finality of the entire earlier litigation, *Rooker-Feldman* can be applied even if the state court action is continuing, so long as the "state court proceedings have "'ended' within the meaning of *Rooker-Feldman* on the federal question at issue." Id., at 89, (*citing* Federacion de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R., 410 F.3d 17 (1st Cir. 2005)). In Federacion, the First Circuit examined *Rooker-Feldman* in light of the Exxon Mobil decision, and held that "*Rooker-Feldman* applies where the state proceeding has ended *with respect to the issues that the federal plaintiff seeks to have reviewed in federal court*, even if other matters remain to be litigated." Id., at 26 (emphasis in original).

Importantly, however, even with this caveat, *Rooker-Feldman* does not bar the Debtor's Objection to the Greene Family's claim because the state court litigation had not "ended" with respect to the issues raised in the Objection as to the amount of the claim. Rather, the Order granting summary judgment left the amount of the claim open, and the Referee's report was never confirmed, so that there has been no "final" determination of the amount owed. Accordingly, *Rooker-Feldman* is not properly invoked to bar this Court from considering the Debtor's Objection to the default interest, late charges and legal fees asserted in the Greene Family's Claim.

### 3. Collateral Estoppel also Does Not Apply to this Contested Matter

For similar reasons, the Debtor is not collaterally estopped from pursuing its Claim Objection. Collateral estoppel precludes a party from raising in a subsequent action an issue that was clearly resolved in a prior action. In re Chaitan, supra, 517 B.R. at 427. As with *Rooker-Feldman*, it is not necessary that the entire prior action have been tried to conclusion. However, it is necessary that the issue in question have been actually litigated and determined.

The Greene Family asserts that the State Court necessarily found that proper notice of default and acceleration was given in order to have awarded summary judgment against the Debtor. However, all the State Court actually needed to find was that there had been a default. The State Court did not address questions of entitlement to default interest, legal fees or late charges, all of which were specifically reserved for the Referee, whose report was never confirmed. As such, there was never a final determination of these issues.

### 4. The Debtor Did Not Waive its Right to Object to the Claim

The Greene Family raises one additional procedural argument, contending that under CPLR 3015(a), the Debtor somehow waived its right to challenge the validity of the October 18 Notice in bankruptcy. This argument misapprehends the nature of this Court's consideration of the Claim Objection, as well as the focus of that objection.

This Court is not sitting in appellate review of the State Court proceedings, or as an adjunct of the State Court. Rather, since the Referee's report was never confirmed, the preclusion doctrines are wholly inapplicable to this case. This Court is not bound by any prior proceedings, but will make its own independent rulings.

Moreover, the reference to CPLR 3015(a) is questionable to say the least, since it references conditions precedent, which is not the focus of the Debtor's objection. In Onewest

11

Bank FSB v. Berry, 901 N.Y.S.2d 908 (Sup.Ct. Suffolk Co. 2009), cited by the Greene Family, the defendant was held to have waived the affirmative defense of non-compliance with notice provisions, which were a condition precedent to the foreclosure action. Here, the Debtor is directing its objection to the imposition of default rate interest, not the right to foreclosure.

Additionally, CPLR 3015 is a state statute that has no applicability to this Chapter 11 case. Rather, the Claim objection is governed by the liberal rules of pleading contained in Federal Rule 8, which provides that so long as there is no prejudice to the opposing party, an affirmative defense is not waived even if raised after issue has been joined. *See, e.g.* Snyder v. U.S., 1995 WL 724529, at *11 (E.D.N.Y. July, 26, 1995) ("the purpose of Rule 8(c) is to give the opposing party notice of the issue and an opportunity to argue its position. *Blonder-Tongue Lab. v. University of Illinois Foundation,* 402 U.S. 313, 350 (1971). Accordingly, an affirmative defense is not deemed waived . . . where the defendant's failure to plead the affirmative defense does not prejudice the plaintiff").

In short, by filing their Claim in this Court, the Greene Family has placed the merits of the Claim directly before this Court subject to a full review of all potential defenses held by the Debtor.

### B. The Greene Family's Claim is Overstated, and Must be Reduced

#### 1. The Greene Family is Not Entitled to Default Rate Interest, as There Was Never an Event of Default under the Note and Mortgage

Turning to the merits of the Claim, it is clear that insufficient notice was provided as required by the Note and Mortgage to effectuate either the acceleration of the debt or the imposition of default rate interest of 18%.

Under the Note and Mortgage, the acceleration and imposition of default rate interest can only be effectuated after the occurrence of an event of default. In this case, the sole

12

event of default which has been alleged by the Greene Family is the failure to make a timely payment which continued for five days after service of notice of the default. However, the October 18 Letter was misaddressed and improperly served, and therefore could not trigger an "event of default" sufficient to permit the debt to be accelerated or the imposition of default interest.

Paragraph 10(b) of the Note, and its counterpart, Paragraph 13(a) of the Mortgage, both provide that an event of default occurs only if a payment remains outstanding after a proper service of a notice of default. The notice provisions are contained in paragraph 20 of the Mortgage, which requires notices to be sent by certified mail, return receipt requested, to specific persons and entities.

The October 18, 2010 mailing of the October 18 Letter was clearly insufficient to create an event of default, as the letter was not sent by certified mail. The inadequacy of this mailing is implicitly acknowledged by the fact that a second mailing is alleged to have been made on or about October 27, 2010, this time by certified mail, return receipt requested.

However, this second attempt to give notice was not properly addressed, and was never received by the Debtor or its principals, as set forth in the accompanying Declarations of Leo Salzman, Esq., then-counsel for the Debtor, and William Lefkowitz and Joseph Strulovitch, the principals of the Debtor.

The fact that Samuel Weisner apparently received a copy of the letter did not constitute compliance with the notice requirements. As set forth in the Declaration of William Lefkowitz, Mr. Weisner was not an authorized agent of the Debtor, nor was the Greene Family ever notified by the Debtor of a change of address, so that notices sent to the Debtor in care of Mr. Weisner were incorrectly addressed.

13

The Greene Family attempts to sidestep the deficient notice by claiming that the Debtor had actual knowledge of the default, whether or not the notice was properly mailed. This is incorrect. As set forth in all three of the Declarations filed herewith, neither of the principals of the Debtor nor the Debtor's attorney, who were required to get notice under the specific terms of the Mortgage, ever had actual knowledge of the alleged default or the purported notice to cure prior to the commencement of the foreclosure litigation.

Moreover, even assuming, *arguendo*, that the Debtor is found to be have had actual knowledge, this is still insufficient as a matter of law to constitute an "event of default", as the Greene Family is subject to a standard of strict compliance with the notice provisions under New York law. *See*, In re St. Casimir Development Corp., 358 B.R. 24, 41 (S.D.N.Y. 2007)("New York law requires parties to strictly comply with a contract's notice provisions. Alliant's failure to do so renders its Removal Letter invalid."); Mfrs. & Traders Trust Co. v. Korngold, 618 N. Y.S.2d 744, 745 (Sup.Ct. Rockland Co. 1994)(plaintiff precluded from accelerating the mortgage based on failure to comply with the notice conditions of the mortgage). Dale v. Industrial Ceramics, Inc., 571 N.Y.S.2d 185, 186 (Sup.Ct. N.Y. Co. 1991)("The notice of default was not given as required by the note.... Again, because the notice was not properly given there can be no acceleration").

In their reply, the Greene Family cites to a line of cases which hold that noncompliance with notice provisions can be ignored when there is actual knowledge of the default. It is respectfully submitted that these cases are wrongly decided, as the courts cited in the Opposition imposed a "no harm, no foul" rule to achieve a result that is impermissible under New York law. As the court in Dale explained, strict compliance with the notice provision is an

absolute pre-requisite to the imposition of adverse consequences such as a default or acceleration:

> In the law of negotiable instruments or bills and notes there are certain conditions such as agreed upon notice provisions which require strict compliance before courts will act. This is particularly true where notice is determined by agreement rather than created by statute such as Uniform Commercial Code § 3–508. For the notice requirement is not merely some vestigial ceremonial remain, which evolved from medieval England to add luster to our legal system. It has a vital purpose. The acceleration clause of a promissory note is not unlike the sword of Damocles hanging over a borrower's head as a constant threat to at least financial imposition if not economic ruin. The declaration of a default which prompts acceleration is therefore a drastic act. Thus, before the sword falls, it is the purpose of the default notice to give the borrower one final chance to avoid default and the harsh effect of acceleration.

Id., at 186.

The Dale Court's analysis, which was cited with approval by Judge Hardin in In re St. Casimir Development Corp., supra, is particularly apt here, where the purported actual knowledge that the Greene Family attempts to impute to the Debtor is in the form of a letter to a person acting as a clerk, and not to the decision maker, William Lefkowitz, the principal who executed the Note and Mortgage on behalf of the Debtor.

The Greene Family tried to make an end run around their failure to abide by the contractual obligations to give proper notice to the correct addressees by including an acceleration of the debt in their foreclosure complaint. They now argue in their Opposition that this was sufficient under New York law to accelerate the debt and invoke default rate interest. In fact, however, in each of the cases cited by the Greene Family, no prior written notice was required before acceleration. See, Albertina Realty Co. v. Posbro Realty Corp., 258 N.Y. 472, 475 (1932)("No demand was necessary to enable plaintiff to elect to exercise his right to insist

15

that the whole was due"); <u>Charter One Bank, FSB v. Leone</u>, 45 A.D.3d 958 (3rd Dep't 2007)("neither notice of default nor demand for payment is a condition precedent"); <u>Logue v. Young</u>, 94 A.D.2d 827 (3d Dep't 1983)("The mortgage provided that the whole of the principal sum and interest shall become due at the option of the mortgagees after default in payment of any installment of principal or interest for 30 days"); <u>City Streets Realty Corp. v. Jan Jay Ent. Corp.</u>, 88 A.D.2d 558 (1st Dep't 1982)("The mortgage contains an acceleration clause whereby the mortgagee may choose, without notice, to declare the entire mortgage . . due upon default").

In this case, the plain language of both the Note and Mortgage require notice of default sent by certified mail to the correct parties before the debt can be accelerated. Accordingly, the cases cited by the Greene Family are wholly inapposite to the facts of this case and do not support a finding that the debt was accelerated or default interest properly invoked.[2]

This case closely parallels the facts in <u>In re Sheba Realty Corp.</u>, 2014 WL 1373094 (Bankr. E.D.N.Y. 2014). There, the Bankruptcy Court found that the debtor had never defaulted, barring acceleration of the debt, and negating the claim for default rate interest:

> In summary, the Court finds that the Debtor did not have the required notice of monetary default until on or around June 29, 2010. The 2010 Cure Payments were more than sufficient to cover any arrearages existing at that point, and they were validly, duly, and properly tendered to Astoria within 10 days of the Debtor's receipt of proper notice. Therefore, Astoria never had, and ADHY does not now have, the right to compel the Debtor to pay default interest under the terms of the note and mortgage. Thus, ADHY's claim for default interest is disallowed entirely.

<u>Id.</u>, at *11. <u>See, also</u>, <u>In re Marcia Campbell</u>, 513 B.R. 846, 852 (Bankr. S.D.N.Y. 2014) (mortgagee was not entitled to pre-petition default interest because it "failed to establish the ...

---

[2] Without acceleration, even if, *arguendo*, default interest is permitted, that default interest rate can only be charged on those monthly installments that remain unpaid at the beginning of each month, and not the entire unpaid principal balance. Thus, in any event, the calculation of default interest is grossly overstated in the Greene Family Claim.

date of acceleration, and it appears that [mortgagee] and its predecessors have not been forthright concerning the issue").

In the instant case, having failed to give proper notice of default in compliance with the express requirements of the Mortgage, the Greene Family is barred from claiming entitlement to pre-petition default interest.

### 2. There is no Basis for Allowance of Post-Petition Interest

In its Cross Motion, the Greene Family asserts entitlement to post-petition, or pendency interest at the default rate. Since no proper notice of default was ever served by certified mail, the same infirmities as cited above bar imposition of post-petition default rate interest. Moreover, the Debtor has been current throughout the Chapter 11 case with its adequate protection payments under Section 362(d)(3), in an amount consented to by stipulation with the Greene Family, so that there is no basis for a post-petition claim for interest.

### 3. The Greene Family is Entitled to Either Late Charges or Default Interest, But Not Both

The Greene Family also seeks unpaid late charges, which are fixed in Paragraph "5" of the Note as 5% of any payment that is more than ten days overdue. To the extent that default interest is disallowed, the late charges are proper. However, assuming *arguendo* that default interest is permitted, the Greene Family cannot also recover late charges.

Bankruptcy Courts reviewing this issue have held that "decisional law is uniform that oversecured creditors may receive payment of either default interest or late charges, but not both". In re Vest Associates, 217 B.R. 696, 701 (Bankr. S.D.N.Y. 1998). *See, also,*, In re 785 Partners LLC, 470 B.R. 126, 137 (Bankr. S.D.N.Y. 2012)(citing cases, and noting that "[t]he reason is that the late fee and default interest are designed to compensate the lender for the same injury, and awarding both amounts to double recovery").

17

In their Opposition, the Greene Family cites to several cases from New York courts which they claim authorized both late fees and default interest. However, each of these cases merely grants a request for both, without any analysis whatsoever.

### 4. The Greene Family Has Completely Failed to Meet its Burden of Establishing Entitlement to Legal Fees

The Claim filed by the Greene Family states entitlement to $240,091.66 in pre-petition legal fees based entirely on the unconfirmed Referee's report, without any supporting documentation whatsoever. In their Cross Motion, the Greene Family seeks additional fees for the post-petition period. This supporting documentation for this portion of the requested fees is likewise utterly deficient.

The burden is squarely on the party seeking allowance of fees to establish that the fees are reasonable. In re Danise, 112 B.R. 492, 494 (Bankr. D. Conn. 1990)("The burden of proving entitlement to fees and expenses is on the applicant, and "[s]ince every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors or for use by the debtor, this burden is not to be lightly regarded." *In re Gillette Assoc., Ltd.,* 101 B.R. 866, 879 (Bankr. N.D.Ohio 1989).").

Judge Gropper identified nine separate factors which have been used by the Bankruptcy Courts in reviewing post-petition legal fees under Section 506(b), including:

> (1) whether the legal fees were authorized by the loan agreement;
> (2) whether they were necessary to the promotion of the client's interest;
> (3) whether they are permitted under applicable law;
> (4) whether they are compatible with the policy underlying the Bankruptcy Code;
> (5) whether the time spent is appropriate to the complexity of the task;
> (6) whether the hourly rate is appropriate under applicable standards;
> (7) whether the tasks were assigned to the fewest and least senior attorneys able to render the services in a competent and efficient manner;

> (8) whether the fee should be adjusted to reflect duplicative services rendered by attorneys representing other parties with a common interest in the case; and
>
> (9) whether the fee should be adjusted to reflect the court's observation of the nature of the case and the manner of its administration.

In re Northwest Airlines Corp., 2007 WL 3376895, at *1-2 (Bankr. S.D.N.Y. Nov. 9, 2007).

These factors are substantially similar to the standard of review used by the state courts in New

York relating to pre-petition fees. As recently reiterated by one Court:

> It is well settled that attorneys' fees are subject to review and must be reasonable . . . In deciding an application for counsel fees the Court must consider "the following factors: time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented; the lawyer's experience, ability and reputation; the amount involved and benefit resulting to the client from the services; the customary fee charged by the Bar for similar services; the contingency or certainty of compensation; the results obtained; and the responsibility involved.

PNL Phoenix, LLC v. Janton Industries Inc. 2015 WL 1632449, 3–4 (Sup. Kings Co. 2015).

First, the Greene Family fails to establish that the fees are recoverable under the

terms of Paragraph 16 of the Note which allows fees for the "Cost of Collection", or Paragraph

25 of the Mortgage, which permits reimbursement of fees in the event the Mortgagee "employs

an attorney to collect any of the indebtedness or to enforce performance of the obligations,

covenants and agreements secured hereby of under the Loan documents, or to advise the

Mortgage with respect to its rights and remedies hereunder or under the Loan Documents in case

of an Event of Default or threatened Event of Default". *See* Note and Mortgage, annexed as

Exhibits "B" and "C", respectively, to the Claim Objection.

As discussed at length above, there was never any Event of Default. Moreover,

the language of both the Note and Mortgage lack any specific reference to reimbursement for

services rendered in connection with a foreclosure action or bankruptcy filing. Thus, the Greene

Family is only entitled to the actual and necessary "costs of collection", including reasonable attorneys' fees, which does not permit recovery of all fees incurred in the underlying litigation. *See*, Vardy Holding Co. v. Metric Resales, Inc., 131 A.D.2d 564 (2d Dep't 1987) ("The promissory notes evidencing the underlying obligations provided, in relevant part, for attorneys' fees to be awarded '[i]f this note be not paid when due'. 'That provision in the note[s] is not the equivalent of an obligation to pay reasonable counsel fees in an action to foreclose a mortgage'") *quoting* Lipton v. Specter, 96 A.D.2d 549 (2d Dep't 1983).

Accordingly, even from the minimal information provided, it appears that the majority of the legal services which are included in the Claim are outside of the limited services for which reimbursement is required under the plain language of the Mortgage.

Moreover, the documentation which has been supplied is completely deficient in meeting any of the other tests for reasonableness. There was no documentation whatsoever attached to the original Claim in support of the fees alleged to have been incurred prior to the filing of the Chapter 11 petition.

The Greene Certification submitted in support of the Cross Motion includes timelogs from three different firms alleged to have provided post-petition services. However, every single log entry has been substantially redacted, and shows only the date, amount of time and fee charged for services. There is no description of any of the services performed. Even the initials of the attorneys and paralegals that performed the alleged services have been redacted, so that there is no way to identify the persons who purportedly worked on the file. There is no biographical or other information to support the hourly rates charged. There is no affidavit from counsel, no narrative description of the services rendered, and no attempt to show that the services were necessary or appropriate. There is not even a summary statement of the total

20

amount of the fees requested, although it appears to be an aggregate of $87,957.97 in fees and expenses among the three firms.

Given the lack of evidence that the fees are recoverable under the Mortgage, and the complete dearth of basic information in support of the fee request, the fees sought cannot be allowed for either the pre-petition or post-petition periods based on the information presented.

The need for a proper application was specifically addressed in the Claim Objection. The Greene Family has had an opportunity to present its claim for allowance of fees in its Cross Motion, and has failed to do so in a proper manner. Accordingly, it should be barred from further supplementing its papers at this late date. The application for fees should be denied.

### C. This Court is Not Bound by the Unconfirmed Referee's Report

Citing the decision by Judge Robert Hall in In re Five Boroughs Mortg. Co., Inc., 176 B.R. 708 (Bankr. E.D.N.Y. 1995), the Greene Family argues that even if the Debtor is not precluded from challenging the Claim, this Court is bound by the calculation of default interest, late charges and legal fees contained in the unconfirmed Referee's report. In Five Boroughs, the stay had been vacated, but the referees declined to calculate the debt while the bankruptcy case was still pending. The Court in Five Boroughs merely acknowledged that the vacatur of the stay was for all purposes, including permitting the referees to compute. Nothing in the case holds that the Bankruptcy Court lacks jurisdiction to determine the amount of the claim on its own. In re Solid Rock Dev. Corp., Inc., 481 B.R. 221, 227 (Bankr. N.D. Ga. 2012) ("the question of jurisdiction was not determined by the court [in Five Boroughs]").

In this case, the Referee has completed his report, but that report has not been confirmed and has no *res judicata* effect on the state court, much less this Court. Moreover, there are several obvious infirmities in the Referee's report, including allowance of default rate

interest in the absence of the prior notice by certified mail required under the Note and Mortgage, and the allowance of duplicative late charges and default interest. For these reasons, the Referee's report should not be given any evidentiary weight by this Court. This Court can and should make its own independent determination as to the allowance of default interest, late charges and legal fees in connection with the pending Claim Objection.

### D. That Portion of the Cross Motion Seeking Relief from the Automatic Stay Should be Denied

That portion of the Cross Motion filed by the Greene Family seeking to vacate the stay so as to permit the Referee's report to be confirmed by the state court should be denied as unnecessary and likely to unreasonably delay the administration of the Debtor's Chapter 11 case. The issues are fully briefed and squarely before this Court, and the Greene Family has consented to the jurisdiction of this Court to decide the Debtor's Claim Objection in the December 2014 Stipulation. Accordingly there is no reason whatsoever to delay while the parties return to state court and start the entire process of confirming the Referee's report in light of the Debtor's objections to that report.

The Bankruptcy Court's determination of a motion to vacate the automatic stay so as to permit the parties to proceed with pre-petition state court litigation is based on an equitable balancing test that takes into account the degree of hardship imposed on the bankruptcy estate and the core goals of the Bankruptcy Code. In New York, this equitable balancing test is guided by the well-known factors enunciated by the Second Circuit in In re Sonnax Industries, Inc., 907 F.2d 1280, 1286 (2d Cir. 1990), including:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has

22

> assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

Notably, the burden is squarely on the Greene Family, as the moving party, to establish their entitlement to relief from the stay. In this regard, the Second Circuit has specifically instructed that:

> Section 362(d)(1) requires an initial showing of cause by the movant . . . If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection."

In re Sonnax Industries, Inc., supra, 907 F.2d at 1285.

The Sonnax factors should be reviewed through the prism of the principles underlying the Bankruptcy Code. Consequently, the decision to proceed outside of the Bankruptcy Court cannot be made in a vacuum and should only be granted in situations where it is clear that the interests of the estate will not be harmed. In this case, a Plan of Reorganization will have been filed before the hearing on the Claim Objection, and the confirmation process will have begun. To delay this process while the parties return to state court will harm creditors. *See,* In re Bally Total Fitness of Greater New York, 411 B.R. 142 (S.D.N.Y. 2009) (employing the Sonnax factors and noting that a confirmation hearing was already scheduled, the District Court affirmed the Bankruptcy Court's denial of a lift stay motion because doing so would unduly risk interfering with the reorganization process).

As noted above, an earlier motion seeking stay relief was resolved through the December 2014 Stipulation between the Debtor and the Greene Family, which established

schedules for the filing of the Claim Objection and the plan confirmation process. At no time in the discussions leading to this stipulation was any provision requested for stay to be vacated so that the Greene Family could pursue confirmation of the Referee's report. At this late date, the relief sought is untimely and simply not warranted.

## Sonnax Factor 1:
### (Vacating the stay will not finally resolve the amount of the Claim)

Factor 1 considers whether vacating the stay would result in a partial or complete resolution of the issues. Since the State Court has only the pre-petition claim before it, it cannot finally decide the total amount due to the Greene Family. Only this Court can determine the post-petition claim, and while many of its issues presented are similar, Section 506(b) requires specific findings as to reasonableness which are outside of the jurisdiction of the State Court.

Adding further uncertainty and delay, the Debtor's challenge to the Referee's report had not yet been briefed as of the Chapter 11 filing, so that substantial time will likely pass before the issues can be finally resolved.

Conversely, the Claim Objection has been filed, the issues are being briefed, and a hearing is already scheduled. This Court has both the experience and jurisdiction required to deal with questions of entitlement to default interest and legal fees head-on, and in much more rapid fashion.

In view of all of the foregoing, there are compelling grounds to keep the stay in place, rather than risk sending the matter into uncertain state court waters.

## Sonnax Factor 2
### (The Claim Objection is a core bankruptcy proceeding)

Factor 2 addresses whether the litigation is sufficiently related to the bankruptcy case. In describing the type of actions unrelated to the bankruptcy proceeding in which stay relief might be warranted, Congress provided the following examples:

> [A] divorce or child custody proceeding involving the debtor may bear no relation to the bankruptcy case. In that case, it should not be stayed. A probate proceeding in which the debtor is the executor or administrator of another's estate usually will not be related to the bankruptcy case and should not be stayed.

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 343-44 (1977); S Rep. No. 95-989, 95th Cong., 2d Sess. 52 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 6300.

In sharp contrast to these legislative examples, the resolution of a lender's claim for default interest and attorney's fees in the context of a Chapter 11 real estate case presents a quintessential example of core jurisdiction at the heart of this Court's powers. Thus, Factor Two favors the Debtor, based upon the jurisdictional prerogatives of 28 U.S.C. § 157(b)(2)(A), (B), (K), (L) and (O).

## Sonnax Factor 3
### (The Debtor is not a fiduciary)

As the Second Circuit noted in <u>Sonnax,</u> the Senate Report to the Bankruptcy Code comments directly on this point, explaining that:

> Generally, proceedings in which the debtor is a fiduciary . . . need not be stayed since they bear no real relationship to the purpose of the stay which is to protect the debtor and the estate from creditors.

> S.Rep. No. 989, 95th Cong., 2d Sess. 52, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5838.

<u>In re Sonnax Industries, Inc.,</u> <u>supra,</u> 907 F.2d at 1285-1286.

Here, the Debtor is not fiduciary and the Claim Objection involves rights as between a commercial lender and its borrower. Thus, the third factor does not support vacating the stay.

## Sonnax Factor 4
### (There is no need for a specialized court to consider the issues)

Factor 4, considering whether the issues presented need to be tried in a specialized court, also provides no assistance to the Greene Family. This case presents a "meat and potatoes" issue for the Bankruptcy Court. As such, the state courts do not have greater expertise in deciding questions of default interest or attorney's fees, making this case readily distinguishable from those involving specialized areas of law, such as domestic relations issues (*See, e.g.*, In re Newman, 196 B.R. 700, 703 (Bankr. S.D.N.Y. 1996); Robbins v. Robbins, 964 F.2d 342 (4th Cir. 1992), or a specialized forum (*See* In re Marketxt Holdings Corp., 428 B.R. 579 (S.D.N.Y. 2010) (deferring to arbitration panel specifically established by the National Association of Securities Dealers to address the issues presented)).

## Sonnax Factor 5
### (There is no insurance)

Factor 5 favors vacating the stay if insurance is available to pay the claim. Because this case does not involve a personal injury claim, there is no insurance, and Factor 5 does not support vacating the stay.

## Sonnax Factor 6
### (The State Court Action does not primarily concern third parties)

The Sixth Factor of whether the state court litigation concerns primarily third parties also militates in favor of denying the Cross Motion. The purpose behind this inquiry has been explained as follows:

> A court may lift a stay for actions which bear little relation to the bankruptcy case. See 2 Collier on Bankruptcy ¶ 362.07, at 362-50 (15th ed. 1982). Such lack of connection with the title 11 case occurs where the action essentially involves third parties, the debtor functions only as a bailee or conduit for the goods or proceeds in question, and resolution of the issue in no way frustrates the orderly distribution of assets of the estate.

In re Mego Intl, Inc., 28 B.R. 324 (Bankr. S.D.N.Y. 1983).

The Claim Objection involves the Debtor and the Greene Family alone. Thus, Factor 6 does not support vacating the stay.

## Sonnax Factor 7
### (Creditors will be prejudiced by vacatur of the stay)

In their discussion of the Cross Motion, the Greene Family completely ignores the Seventh Factor. It is virtually indisputable that other creditors will greatly benefit from denial of the lift-stay motion and a prompt resolution of the Claim Objection in bankruptcy, as the other creditors cannot be paid until a plan is confirmed. Fixing the amount of Claim is a prerequisite for the confirmation process, so all parties have a clear sense of the extent that funds will be need to satisfy the Claim of the Greene Family, and a schedule can be established for distributions to the other creditors and equity holders. The prejudice to the other creditors is manifest, and strongly supports denial of the Cross Motion. *See, e.g.*, In re Dreier, 438 B.R. 449, 456 (Bankr. S.D.N.Y. 2010) (finding that Factor 7 favored denial of the lift stay motion because "[a]waiting a state court determination will prejudice the other creditors that stand behind her alleged first priority, and cannot receive a distribution until the dispute is resolved").

## Sonnax Factor 8
### (The State Court Action does not involve a claim for equitable subordination)

As there is no issue of equitable subordination of a claim, this Factor is not applicable in this case.

### Sonnax Factor 9
#### (The Greene Family's success in the State Court Action will not lead to an avoidable judicial lien)

Factor 9 is also not applicable, because the avoidance of liens is not an issue here. Thus, the Greene Family cannot rely on Factor 9.

### Sonnax Factor 10
#### (Judicial economy favors resolving the issues in Bankruptcy Court)

The question of judicial economy is focused on choosing between two parallel proceedings "to save judicial resources, prevent duplicative litigation, and avoid potentially inconsistent results." In re Henderson, 352 B.R. 439 (Bankr. N.D.Texas 2006). Here, this is an easy choice. The Bankruptcy Court already has all of the pertinent issues squarely before it, and has the unquestioned jurisdiction and power to make a direct ruling on the allowability and amount of both the pre-petition and post-petition portions of the Claim asserted by the Greene Family. See, In re Sonnax Industries. Inc., supra, 907 F.2d at 1287 (Affirming retention of the case in Bankruptcy Court where the state court case was not ready for trial, and finding that "the bankruptcy proceeding provides a single, expeditious forum for resolution of the disputed issues"). The State Court cannot possibly address the amount of the Claim in the same expeditious manner.

Nor is there any jurisdictional bar to the Claim Objection being heard in bankruptcy. The Greene Family voluntarily submitted itself to this Court's jurisdiction, and indeed presented the issue of the amount of the debt to this Court for consideration when it filed a proof of claim. In this regard, Judge Bernstein's decision in In re Dreier, supra, is instructive. In that case, the debtor's former spouse sought to vacate the stay to litigate her rights under a divorce decree against property of the Estate. Judge Bernstein denied her motion, finding that

there were no issues presented which could not be heard and determined by the Bankruptcy Court, and in particular noting that:

> Elisa has asserted a $7 million first priority claim against the estate. Her claim is based on the acceleration of the domestic support obligations under the Settlement, and the resolution turns on the interpretation of the parties' contract. She has submitted herself to this Court's jurisdiction, and her claim raises the very question she wants the state court to decide.

Id., 438 B.R at 456.

In short, since (i) the Bankruptcy Court has clear subject matter jurisdiction over the Claim Objection as a core proceeding in which the Greene Family has already consented to the Court's jurisdiction and (ii) the Bankruptcy Court is best suited to provide a complete and expeditious resolution of the issues, Factor 10 clearly favors denial of the Cross Motion.

### Sonnax Factor 11
### (The parties are not ready for trial in the State Court Action)

In contrast the readiness of the parties for this Court to rule on the Claim Objection, the Debtor's objection to confirmation of the Referee's report has not been filed in the State Court, nor briefed by either party.

To the extent that the Greene Family contends that the Claim Objection should be held in abeyance while it pursues its claim in the State Court, it has only itself to blame for failing to press this issue earlier. Instead, the Greene Family waited until after the Debtor filed its Claim Objection and the commencement of the confirmation process, presenting a clear example of forum shopping.

### Sonnax Factor 12
### (The Balancing of Harms Favors Denial of the Motion)

As explained above, the vacatur of the stay will not result in a final determination concerning the actual amount of both the pre-petition and post-petition Claim. Moreover, there

will necessarily be delays attendant with returning to the State Court to litigate the Debtor's challenges to the Claim. On the other hand, these issues are fully joined before the Bankruptcy Court. Accordingly, a final determination of the Claim Objection can be easily obtained in bankruptcy long before the Greene Family can possibly finalize its judgment in the state court.

Importantly, there is no potential "harm" to the Greene Family from proceeding in this Court. The absence of any harm is more than sufficient to support a finding that Factor 12 favors the Debtor. In re Dreier, supra, 438 B.R. at 456 (finding that where movant fails to identify any harm to herself, "continuation of the stay does not impact her, and the balance of harms does not weigh in favor of stay relief (Factor # 12).").

On the other hand, there is a clear prejudice to the other creditors from the extensive delay attendant to stay relief, which will undoubtedly delay the confirmation process. This presents an obvious harm to the Debtor's estate and to other creditors. Accordingly, the balance of the harms weighs strongly against vacating the stay.

In sum, none of the twelve Sonnax factors actually support the Cross Motion. Accordingly, the requested relief must be denied.

## V. CONCLUSION

For all of the reasons set forth herein, the Debtor's Objection to so much of the Greene Family's claim as seeks default interest, late charges and attorneys' fees should be sustained, and the Cross Motion should be denied in its entirety.

Dated: New York, New York
      September 4, 2015

> GOLDBERG WEPRIN
> FINKEL GOLDSTEIN LLP
> *Attorneys for the Debtor*
> 1501 Broadway, 22nd Floor
> New York, New York 10036
> (212) 221-5700
>
> By: _____
>     J. Ted Donovan Esq.