**RABINOWITZ, LUBETKIN & TULLY, LLC**
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey 07039
(973) 597-9100
(973) 597-9119 (Fax)
*Counsel to Secured Creditor,*
*Hal J. Greene Living Trust, David A. Greene and*
*Trust u/w M. Greene FBO Sabrina Greene*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>KEEN EQUITIES, LLC,<br><br>                Debtor. | Case No. 13-46782 (NHL)<br><br>Chapter 11 |

**SUR-REPLY MEMORANDUM OF LAW OF HAL J. GREENE LIVING
TRUST, DAVID A. GREENE AND TRUST U/W M. GREENE FBO
SABRINA GREENE ("THE GREENE FAMILY") IN RESPONSE TO DEBTOR'S
REPLY TO (i) OPPOSITION OF THE GREENE FAMILY TO THE DEBTOR'S
OBJECTION TO VARIOUS ASPECTS OF SECURED CLAIM AND (ii) THE CROSS-
MOTION TO FIX AMOUNT OF POST-PETITION CLAIM AND VACATE THE
AUTOMATIC STAY**

**RABINOWITZ, LUBETKIN & TULLY, LLC**
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey 07039
*Counsel to Secured Creditor,*
*Hal J. Greene Living Trust, David A. Greene and*
*Trust u/w M. Greene FBO Sabrina Greene*

On the Brief:
    LAURA E. QUINN

Of Counsel:
    JONATHAN I. RABINOWITZ
    JEFFREY A. COOPER

# TABLE OF CONTENTS

*PAGE*

Table of Authorities ................................................................................ iii

Preliminary Statement ............................................................................. 1

Statement of Facts .................................................................................. 4

**POINT I** – The State Court Has Previously Determined That An Event Of Default Occurred, And That The Greene family Is Entitled To Default Rate Interest, Late Charges And Legal Fees ........................................................................................ 5

**POINT II** – The Law Of The Case Doctrine May Be Applied To The State Court's Determinations That An Event Of Default Occurred, That The Greene Family Is Entitled To Default Rate Interest, Late Charges And Legal Fees, And To The Referee's Calculations... 12

**POINT III** – The Debtor Does Not Adequately Refute The Argument That It Has Waived Its Right To Argue That The Greene Family Is Not Entitled To Default Interest, Late Charges And Attorneys Fees ...................................................................................... 13

**POINT IV** – Should The Bankruptcy Court Address The Debtor's Substantive Arguments, There Was An Event Of Default .................................................................... 15

    A. There Was An Event Of Default Under ¶13(b) Of The Mortgage For Which No Notice Was Required                                                                    15

    B. The Debtor Had Actual Notice Of Default Which Was Sufficient To Trigger The Imposition Of Default Interest And Acceleration                                         16

**POINT V** – The Greene Family Is Entitled To Post-Petition Default Rate Interest ........ 19

**POINT VI** – The Greene Family Is Entitled To Both Pre-Petition Default Rate Interest And Late Charges ........................................................................................... 21

**POINT VII** – The Greene Family Is Entitled To Legal Fees ......................................... 22

i

**POINT VIII** – The Sonnax Factors Favor Stay Relief .................................................. 23

    A.  Sonnax Factor 1 (Resolution Of The issues) Favors Stay Relief           24

    B.  Sonnax Factor 2 (Lack Of Interference With The Bankruptcy Case) Favors Stay
        Relief           25

    C.  Sonnax Factor 4 (Expertise Of The State Court) Favors Stay Relief          25

    D.  Sonnax Factors 7 (No Prejudice To Other Creditors), 10 (Judicial Economy) and 11
        (Readiness For Resolution Of The Issues In State Court) Favor Stay Relief     25

    E.  Sonnax Factor 12 (Balance Of Harms) Favors Stay Relief          26

    F.  Sonnax Factors 3 (Whether The Debtor Is A Fiduciary), 5 (No Insurance), 6 (No
        Involvement Of Third Parties), 8 (No Claim For Equitable Subordination) and 9
        (Avoidance Of Liens) Are All Inapplicable          27

    G.  Aside From Sonnax, Other Case Law Supports Granting Stay Relief        27

Conclusion ............................................................................................................... 28

# TABLE OF AUTHORITIES

## Cases

785 Partners LLC,
   470 B.R. 126 (Bankr. S.D.N.Y.) ................................................................................. 21

Burke v. Crosson,
   85 N.Y.2d 10 (1995) ..................................................................................................... 8

Central Mortg. Co. v. Acevedo,
   34 Misc.3d 213 (Sup. Ct., Kings County 2011) ....................................................... 5, 6

Chang v. Chang,
   190 A.D.2d 311 [1st Dept. 1993]) ................................................................................ 6

Dale v. Industrial Ceramics, Inc.,
   571 N.Y.S.2d 185 (Sup. Ct. N.Y.Co. 1991) ............................................................... 18

DEF Investments, Inc.,
   186 B.R. 671 (Bankr. D. Minn. 1995) ........................................................................ 10

Feder Corp. v. Bozkurtian,
   48 A.D.2d 701[2d Dept. 1975] ..................................................................................... 5

Five Boroughs Mortg. Co., Inc.,
   176 B.R. 708 (Bankr. E.D.N.Y. 1995) ........................................................................ 11

HSBC Bank USA, Nat. Ass'n v. McKenna,
   37 Misc.3d 885 (Sup. Ct., Kings Cty. 2012) .............................................................. 10

Jan S. v. Leonard S.,
   26 Misc. 3d 243 (Sup. Ct. New York County 2009) .................................................. 10

Karmilowicz v. Hartford Fin. Servs. Grp.,
   494 Fed. Appx. 153, FN 1 (2nd Cir. 2012) ................................................................. 13

Pacific Employers Ins. Co. v. Sav-a-Lot of Winchester,
   291 F.3d 393 (6th Cir. 2002) ...................................................................................... 12

Payne v. Churchich,
   161 F.3d 1030 (7th Cir. 1998) ................................................................. 12

Robbins,
   964 F.2d 342 (4th Cir. 1992) ................................................................... 27

Sonnax Industries, Inc.,
   907 F.2d 1280 (2d Cir. 1990) .................................................................. 23

Thompson,
   231 B.R. 802 (D.Colo. 1999) ................................................................... 12

Vest Assocs.,
   217 B.R. 696 (Bankr.S.D.N.Y. 1998) ...................................................... 21

## Statutes

11 U.S.C. § 362(d)(3)(B)(ii) ...................................................................... 19, 20

## **PRELIMINARY STATEMENT**

The Debtor, Keen Equities, LLC (the "Debtor"), has filed a response (the "Reply") to the Opposition (the "Opposition") filed by Hal J. Greene Living Trust, David A. Greene and Trust u/w M. Greene f/b/o Sabrina Greene (the "Greene Family") to the Debtor's Objection (the "Objection") to the Greene Family's secured proof of claim (the "POC"). This Memorandum of Law is the Greene Family's response to the Reply as authorized by the agreement of the parties memorialized in a letter to the Court dated August 6, 2015, a copy of which is attached hereto.

The Debtor continues to emphasize that the state court foreclosure proceedings have no bearing on the bankruptcy court proceedings, as there was never a final judgment entered confirming the report of the state court referee (the "Referee's Report"). The Debtor's arguments regarding the effect of the state court proceedings are misdirected.

In arguing that the doctrines of *Rooker-Feldman*, collateral estoppel and res judicata do not apply, the Debtor focuses on the argument that the Referee's Report has not been confirmed and that a judgment of foreclosure and sale was never entered, contending that issues as to the amount of interest, legal fees and late charges remain open. The Debtor confuses the distinction between a determination as to entitlement to interest and fees and the amount of such claims. The state trial court's granting of summary judgment was a final determination as to the entitlement to default interest, legal fees and late charges, and cannot be disturbed by the bankruptcy court.

As to the amount of the Greene Family's claims, the doctrines of *Rooker-Feldman*, collateral estoppel and res judicata may also apply to the Referee's Report. Even if these issue and claim preclusion doctrines are inapplicable to the Referee's Report, the Debtor, in its

Objection and Reply, does not challenge the Referee's mathematical calculations. Further, the Referee's Report and calculations are certainly entitled to deference.

An additional ground for recognizing the determinations made in the state court regarding the proper and effective acceleration of the mortgage, as well as the Referee's calculations, is the law of the case doctrine.

The Debtor further fails to adequately refute the Greene Family's argument that the Debtor has waived any argument regarding the lack of an event of default. First, the Debtor is incorrect that CPLR 3015 is inapplicable. Furthermore, notwithstanding the applicability of CPLR 3015, the Debtor fails to even address the Greene Family's argument that the Debtor waived the lack of an event of default argument by failing to raise it at any point in the proceedings before the state trial court or the referee. Finally, the Debtor's argument that the Greene Family has consented to the bankruptcy court's full review of all of the Debtor's potential state court defenses by filing a proof of claim is a misstatement of law for which the Debtor offers no support.

While the bankruptcy court should never reach the substantive issues raised by the Debtor due to the doctrines of issue preclusion, claim preclusion and waiver, there was an event of default. Putting aside the Debtor's argument that there was improper notice to trigger an event of default pursuant to ¶ 13(a) of the Mortgage, there was also an event of default pursuant to ¶ 13(b) of the Mortgage, which does not require notice.

Because the Debtor's argument that there was no event of default fails, its argument that the Greene Family is not entitled default rate post-petition interest also must fail. The Debtor's further argument that the fact that it has been current with its adequate protection post-petition payments somehow defeats the Greene Family's claim to post-petition default rate interest is also

without merit, as the December 2014 Stipulation (the "Stipulation") specifically preserves all of the Greene Family's other claims. As for the Greene Family's entitlement to late fees in addition to default interest, the Debtor does not sufficiently refute the supporting cases cited by the Greene Family.

As for legal fees, the Referee's Report calculates the pre-petition amount, which calculations were based upon extensive documentation. As for the post-petition legal fees, the Debtor complains that the Greene Family's documentation is deficient; however, these records were redacted based upon attorney-client privilege issues, and are available to the Court for in camera inspection or will be available for inspection subject to an appropriate protective order preserving any privilege.

Finally, while the Greene Family maintains that the issues as to entitlement to default rate interest, late charges, attorney's fees and amounts due have already been decided and/or are capable of resolution by the bankruptcy court giving deference to the Referee's Report, if any such issues have not been resolved, then the Greene Family is entitled to stay relief. The Stipulation does not constitute the Greene Family's consent to the jurisdiction of the bankruptcy court to hear state court issues, and the Sonnax factors, as well as other case law, favor granting stay relief.

## STATEMENT OF FACTS

The Greene Family incorporates herein the facts set forth in its Opposition, including the brief and supporting Certifications previously submitted, as supplemented by the Supplemental Certification of Hal J. Greene submitted herewith.  All terms not otherwise defined herein shall have the same definitions as set forth in the Opposition.

## POINT I

### THE STATE COURT HAS PREVIOUSLY DETERMINED THAT AN EVENT OF DEFAULT OCCURRED, AND THAT THE GREENE FAMILY IS ENTITLED TO DEFAULT RATE INTEREST, LATE CHARGES AND LEGAL FEES

The Debtor argues that the *Rooker-Feldman* doctrine, collateral estoppel and res judicata do not apply to the Greene Family's claim for default rate interest, late charges and legal fees because the Referee's Report has not been confirmed and a judgment of foreclosure and sale was never entered, so that the issues were never "finally decided." The Debtor specifically argues that the "*amount* of the liability" has not been finally determined, as the Referee's Report was never confirmed. (See Debtor's Reply Brief, p. 7 [emphasis added]). The Debtor confuses the distinction between a determination as to *entitlement* to default interest and fees and the *amount* of such claims.

Even if the Debtor could successfully argue that the Referee's calculations were never confirmed or finalized, the state trial court's granting of summary judgment was a final determination as to the entitlement to default interest, legal fees and late charges, and cannot be disturbed by the bankruptcy court. In fact, even the Referee had no authority to disturb the state court's determination as to such entitlement.

As correctly noted by the Debtor, once a motion for summary judgment is granted, "the amount of the liability [must still be determined], almost always through the use of a referee to compute the debt, including interest, legal fees, late charges and related costs." (See Debtor's Reply Brief, p. 7). "Generally, '[a] referee has no power beyond that limited in the order of reference.'" Central Mortg. Co. v. Acevedo, 34 Misc.3d 213, 219 (Sup.Ct., Kings County 2011) (citing Feder Corp. v. Bozkurtian, 48 A.D.2d 701 [2d Dept. 1975]). "'A Referee who attempts to

resolve a matter beyond the scope of the reference acts in excess of his or her jurisdiction.'" Id. at 220 (citing Chang v. Chang, 190 A.D.2d 311, 319 [1st Dept. 1993]).

Central Morg. Co. v. Acevedo involved an application for a judgment of foreclosure and sale made following the issuance of the referee's report. Because the trial court's Order Appointing Referee to Compute did not expressly provide that the referee had the authority to determine whether the debt was properly and effectively accelerated, the reviewing court found that the referee did *not* have the authority to make that determination when the Order simply directed the referee "'to ascertain and compute the amount due to the Plaintiff herein for principal, interest, and other disbursements advanced as provided by statute and the Note and Mortgage upon which this action was brought.'" Id.

Prior to entering the Order Appointing Referee, the trial court in Acevedo "ordered that 'a default judgment in favor of the Plaintiff be granted as to the claim described in the Plaintiff's Complaint herein.'" Id. at 215. The reviewing court noted that the Complaint had alleged that "'pursuant to the terms of [the subject note and mortgage] plaintiff has elected to accelerate the mortgage and balance and declare the same to be immediately due and payable'[.]" Id. at 221. The reviewing court further noted that "[g]enerally, this Court makes that determination [(that the debt was properly and effectively accelerated)] itself in ruling on the mortgagee's application for an order of reference, and other courts apparently do likewise." Id. at 220. The reviewing court held that, although the trial court had not explicitly made a determination as to the proper acceleration of the debt, the fact that the trial court entered default judgment on the claim described in the complaint resulted in the presumption that the trial court had made such a determination. Id.

Here, the state court granted summary judgment on the First and Second Causes of Action in the Complaint.  (See Certification of Jeffrey A. Cooper ["Cooper Cert."], Ex. "D"). Paragraphs 16 and 17 of the First Cause of Action state:

> 16.  Keen has failed to comply with the provisions of the Note and the Purchase Money Mortgage by failing to pay each of the installments of principal and interest which became due on and after October 1, 2010.

> 17.  By reason of  such defaults, the plaintiffs have elected and hereby elect to accelerate payment of the entire principal balance remaining unpaid on the Note and the Purchase Money Mortgage. There is now due and payable to the plaintiffs, the principal sum of Three Million Nine Hundred Twenty-Four Thousand, Six Hundred Forty-five & 93/100 ($3,924,645.93) Dollars with interest from September 1, 2010, at the rate of eighteen (18%) percent per annum, together with late charges in the amount of Twenty-nine Thousand Three Hundred Twenty-one & 9/100 ($29,321.09) Dollars thru the date hereof, together with attorneys fees to be fixed by the Court in this action, no part of which has been paid.

(See Cooper Cert., Ex. "A," pp. 13-14).  Furthermore, ¶ 26 of the Second Cause of Action states:

> 26.  Pursuant to the terms and provisions of paragraph "16" of the Note and paragraph "25" of the Purchase Money Mortgage, the plaintiffs are entitled in this foreclosure action commenced *as the consequence of an event of default by Keen* under the Note and the Purchase Money Mortgage, to recover the legal fees, costs and disbursements incurred by the plaintiffs in the prosecution of this foreclosure action.

(See Cooper Cert., Ex. "A," p. 16 [emphasis added]).

Much like the Order Appointing Referee in Acevedo, the Order of Reference in this case directs the Referee "to ascertain and compute the amount due upon the Note and Mortgage which are the subject of this mortgage foreclosure action, together with interest and all penalties (sic.) other sums as may be due thereon, and to examine and report whether the mortgaged premises can be sold in parcels[.]"  (See Cooper Cert., Ex. "E").  Nowhere does the Order of Reference expressly provide that the Referee had the authority to determine whether an event of default had

occurred or whether the debt was properly and effectively accelerated. Accordingly, the Referee did not have such authority, only the authority to calculate the amounts due and to determine whether the property could be sold in parcels.

Moreover, because the state trial court granted summary judgment on the First and Second Causes of Action, it must be presumed that the state court determined that there had been an event of default and, further, that the debt was properly accelerated, as alleged in paragraphs 16, 17 and 26 of the Complaint. This presumption is even more appropriate in the within matter involving the granting of summary judgment than in Acevedo, which involved a default judgment. The burden of proof necessary in granting summary judgment here is even greater than in the case of a default judgment, as the Debtor was given notice and an opportunity to be heard, and, in fact, contested the summary judgment motion.

The entry of summary judgment was a final determination as to the occurrence of an event of default and as to proper and effective acceleration of the debt. The fact that the Referee's Report was never confirmed is irrelevant, as the Referee had no authority to determine these issues. Accordingly, the *Rooker-Feldman* doctrine, collateral estoppel and res judicata are all applicable because the Debtor would have no opportunity to challenge these determinations in state court.

The Debtor suggests that the trial court's order granting summary judgment (the "SJ Order") was not final for res judicata purposes because it was not yet appealable, citing Burke v. Crosson, 85 N.Y.2d 10, 17 (1995). Burke involved the interpretation of CPLR 5501(a)(1), which allows the review of a non-final order upon appeal from a final judgment when that prior non-final order necessarily affects the final judgment. Burke does not stand for the proposition that an order granting summary judgment is not appealable. In fact, the SJ Order itself specifically

advises that that it be served upon all parties in order to "commence the statutory time period for appeals as of right (CPLR 5513(a))[.]" (See Copper Cert., Ex. "D").

 Aside from the fact that the SJ Order was appealable prior to the entry of a final judgment of foreclosure (notwithstanding the fact that it might still have been reviewable by an appellate court upon appeal of the final judgment if not appealed initially), "finality" for purposes of res judicata or collateral estoppel does not equate to "appealability":

> For purposes of preclusion under the doctrine of collateral estoppel, the requirement of "finality" or a "final judgment" is often stated in broad general terms and loosely applied. Traditionally, "finality" has been identified and equated with "appealability" in the context of a particular case. However, the principle of finality or a final judgment in the collateral estoppel or res judicata sense of precluding further litigation of the same issue is *not* identical to the concept of a "final" order in the rules governing appellate jurisdiction. *Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80, 89 (2d Cir.1962) (Friendly, J.) (opining that the term "final" has many nuances of meaning and that the law of judgments does not use it in relation to conclusiveness as the appellate rules do to mean only a judgment which puts an end to litigation and thereby leaves nothing for a court to do but execute a judgment), *cert. denied sub nom. Dawson v. Lummus,* 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962); *Sherman v. Jacobson,* 247 F.Supp. 261, 268 (S.D.N.Y.1965); 18 Charles A. Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice & Procedure* § 4432 (1981); 46 Am.Jur.2d *Judgments* § 583 (1994).
>
> Thus, the scope of the term "final judgment" is not in all cases confined to the final judgment in an action which disposes of the litigation in its entirety but, rather, includes any judicial decision upon a question of fact or law which is not provisional and subject to future change by the same tribunal. *Zdanok v. Glidden Co.,* 327 F.2d 944, 955 (2d Cir.1964), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964). For purposes of preclusion, therefore, a "'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Restatement (Second) of Judgments § 13 & cmt. b (1982). Whether a judgment, not "final" for purposes of prosecuting an appeal, ought to nevertheless constitute a final judgment for purposes of precluding additional

litigation on the same issue "turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review." *Lummus Co.*, 297 F.2d at 89. *Accord Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990, 995–96 (7th Cir.1979) (opining that an otherwise interlocutory order will nevertheless "be given preclusive effect if it is necessarily based upon a determination that constitutes an insuperable obstacle to the [party's] success on the merits"), *cert. denied*, 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1980). *See, e.g., Zdanok*, 327 F.2d at 950, 955 (precluding the admission of additional evidence on the issue of liability in a subsequent action since there was nothing in the opinion of the prior court that lent support to the idea that the court considered itself dealing with an issue partially tried).

In re DEF Investments, Inc., 186 B.R. 671, 683 (Bankr. D. Minn. 1995).

Here, again, the state trial court determined that an event of default had occurred, and that the Greene Family was entitled to default interest, late charges and attorney's fees. The Debtor would have had no opportunity to challenge these determinations before the Referee or the trial court at a confirmation hearing.

As to the amount of the Greene Family's claims, the doctrines of *Rooker-Feldman*, collateral estoppel and/or res judicata also apply to the Referee's Report, but even if not, the Referee's Report and calculations are certainly entitled to deference, as they would be given by the state trial court. HSBC Bank USA, Nat. Ass'n v. McKenna, 37 Misc.3d 885, 894-895 (Sup. Ct. Kings Cty. 2012) ("'Although the court is entitled to reject the report of a referee and make new findings...,the report and recommendations of a referee should be confirmed if his or her findings are supported by the record.'" [citations omitted]. "The referee's findings are particularly entitled to deference where credibility is at issue, since the referee has the opportunity to see and hear the witnesses." [citations omitted]); see also, Jan S. v. Leonard S., 26 Misc.3d 243, 249 (Sup. Ct., New York County 2009).

Here, the Referee performed his computations based upon an extensive record and documentary evidence before him.   Notably, the Debtor does not argue that the calculations themselves are inaccurate, only that the 18% default rate should not have been applied and that the Greene Family was not entitled to late charges and attorney's fees.  The Debtor also does not address the holding in In re Five Boroughs Mortg. Co., Inc., 176 B.R. 708, 713 (Bankr.E.D.N.Y. 1995) that "[t]he bankruptcy court should play no part in the computations by the referee before or after the foreclosure sale[,]" other than to cite a Northern District of Georgia Bankruptcy Court case for the proposition that In re Five Boroughs did not address the issue of the bankruptcy court's jurisdiction.   Accordingly, the Referee's calculations should be given preclusive effect, as more fully argued in the Greene Family's Opposition at Point IV.A.

## POINT II

### THE LAW OF THE CASE DOCTRINE MAY BE APPLIED TO THE STATE COURT'S DETERMINATIONS THAT AN EVENT OF DEFAULT OCCURRED, THAT THE GREENE FAMILY IS ENTITLED TO DEFAULT RATE INTEREST, LATE CHARGES AND LEGAL FEES, AND TO THE REFEREE'S CALCULATIONS

Another doctrine related to those of issue and claim preclusion, which was not previously argued by the Greene Family, and which this Court may apply, is the law of the case doctrine. The law of the case doctrine provides that a court is ordinarily precluded from revisiting an issue previously decided by the same court, or a higher court in the same case. Pacific Employers Ins. Co. v. Sav-a-Lot of Winchester, 291 F.3d 392, 398 (6th Cir. 2002). The doctrine has been applied to cases removed from state court to federal court. Id.; Payne v. Churchich, 161 F.3d 1030, 1037-1038 (7th Cir. 1998). The doctrine has also been recognized and applied to state court decisions in the bankruptcy court context. In re Thompson, 231 B.R. 802, 808 (D.Colo. 1999) ("The integrity of the process and judicial comity required that the state court of appeals's decision and order for retrial, which constituted the law of the case, be given deference and far outweighed the bankruptcy court's interest in the quick administration of the bankruptcy estate.")

In Acevedo, the court presumed that the trial judge had made the determination that the mortgage debt was properly and effectively accelerated, and "treat[ed] that determination as law of the case." 934 N.Y.S.2d at 221. Similarly, here, as argued in Point I, *supra*, it must be presumed that the trial judge determined that the mortgage debt was properly and effectively accelerated, and such determination should be treated as the law of the case, even by this Court. Finally, the Referee's calculations, while not confirmed, also constitute the law of the case, and should be recognized by this Court.

## POINT III

### THE DEBTOR DOES NOT ADEQUATELY REFUTE THE ARGUMENT THAT IT HAS WAIVED ITS RIGHT TO ARGUE THAT THE GREENE FAMILY IS NOT ENTITLED TO DEFAULT INTEREST, LATE CHARGES AND ATTORNEY'S FEES

The Debtor argues that CPLR 3015 is inapplicable because it references conditions precedent and that here, the Debtor is objecting to imposition of default interest, not the right to foreclosure. The Debtor's argument is nothing more than an attempt to distinguish this rule where no distinction exists. The Debtor's objection to the imposition of default interest is based on its argument that there was no event of default as there was no proper notice. The Debtor is thus arguing that proper notice is a condition precedent to the imposition of default interest, and, hence, this defense is required to be specifically pled under CPLR 3015.

The Debtor further argues that CPLR 3015 is not applicable to this bankruptcy case, which must be governed by the federal rules of pleading. The Debtor offers no support for this contention, and is clearly forum-shopping. In addition, even if CPLR 3015 were not applicable here, as the Debtor unconvincingly argues, F.R.C.P. 9(c), made applicable to these proceedings by Fed.R.Bankr.P. 7009, similarly requires that the failure to comply with a condition precedent be pled with particularity. F.R.C.P. 9(c) provides that a party denying that a condition precedent has occurred or been performed "must do so with particularity." F.R.C.P. 9(c); see also, Karmilowicz v. Hartford Fin. Servs. Grp., 494 Fed.Appx. 153, FN 1 (2d Cir. 2012) ("when denying that a condition precedent has occurred or been performed, a party must do so with particularity.") Accordingly, the Debtor's argument that it was not required to plead lack of notice under the Federal Rules is unavailing.

While arguing that CPLR 3015 is inapplicable, the Debtor nevertheless fails to address the Greene Family's argument that the Debtor waived the notice argument by not raising it at *any*

time before the trial court or the Referee, regardless of whether it was required to raise it at the pleading stage.    The Debtor offers no explanation for its failure to raise the notice issue throughout the extensive state court litigation which took place over the course of two years.

The Debtor also argues that the Greene Family has somehow consented to the bankruptcy court's full review of all potential defenses by filing a proof of claim.    Again, the Debtor offers no legal authority in support of this proposition, and this simply is not the law.    The filing of a claim does not constitute either i) consent to apply federal law to state law claims, or ii) waiver of the right to claim issue preclusion based upon prior state court proceedings.    The Debtor is making a transparent attempt to get a second bite at the apple.

## POINT IV

## SHOULD THE BANKRUPTCY COURT ADDRESS THE DEBTOR'S SUBSTANTIVE ARGUMENTS, THERE WAS AN EVENT OF DEFAULT

### A.    There Was an Event of Default Under ¶13(b) of the Mortgage for Which No Notice Was Required

While the Debtor is precluded from arguing that an event of default never occurred, there was, in fact, an event of default. The Debtor continues to emphasize that insufficient notice was provided to either accelerate the debt or impose the default interest rate, focusing on ¶13(a) of the Mortgage. While the Greene Family submits that the Debtor had actual notice of default under ¶ 13(a) of the Mortgage, (see Point III.B., *infra*), the Debtor neglects to acknowledge that there was also an event of default under ¶13(b) of the Mortgage, which provides:

> (b) The failure of Mortgagor to duly observe, fulfill or perform any covenant, condition or agreement with respect to the payment of monies (including default interest) on the part of the Mortgagor to be observed or performed or pursuant to the terms of the Loan Documents other than the periodic payment of principal which shall be governed by subsection (a) above, and such default shall have remained uncured for a period of fifteen (15) days after its due date[.]

(See Doc. No. 85-4). In other words, the failure to pay any monies owed, other than principal, for a period of fifteen (15) days after its due date is an event of default which does not require notice.

Here, it is undisputed that the Debtor failed to pay any monies after October 1, 2010, and that its monthly payment included both principal and interest, so that, as of October 15, 2010, the Debtor had failed to pay monies other than principal for fifteen (15) days after the due date, constituting an event of default for which no notice was required. Such an event of default was alleged in the Complaint in ¶16, wherein it is alleged that "[the Debtor] has failed...to pay each of

15

the installments of principal *and interest* which became due on and after October 1, 2010." (See Cooper Cert., Ex. "A" [emphasis added]).

Clearly, there was an event of default under ¶13(b) of the Mortgage. Furthermore, as to the election to accelerate, this was accomplished by the filing of the Complaint, as argued in the Greene Family's initial brief at Point V.B. The Debtor attempts to distinguish the cases cited by the Greene Family in support of the proposition that the filing of the Complaint constitutes valid election to accelerate by arguing that in those cases, no prior written notice of default was required before acceleration. The Debtor implicitly admits that if no prior written notice is required before acceleration, then the filing of the Complaint constitutes proper acceleration. Here, under ¶13(b) of the Mortgage, no prior notice of default was required, and the debt was properly accelerated by the filing of the Complaint, so that the Greene Family is entitled to both pre-petition and post-petition default rate interest, as well as late charges and attorney's fees.

**B.    The Debtor Had Actual Notice of Default Which Was Sufficient to Trigger the Imposition of Default Interest and Acceleration**

Even under ¶13(a) of the Mortgage, which required notice, the Debtor had actual notice. At the very least, the Debtor admits that it had actual notice as of the filing of the Complaint on January 19, 2011.

As to actual notice prior to the filing of the Complaint, while the Debtor steadfastly denies ever having received actual notice through the October 18, 2010 letter or any knowledge of that letter, the Certification of Hal J. Greene, which has not been refuted by the Debtor, indicates that Samuel Weisner, (who held himself out as the Debtor's property manager and who the Debtor admits collected funds and paid various bills each month, including the mortgage [see Declaration of William Lefkowitz]), had actual notice of an event of default.

As further explained in the Supplemental Certification of Hal J. Greene ("Greene Supp. Cert."), submitted herewith, Hal J. Greene ("Greene") had dealt with Samuel Weisner regarding all issues pertaining to the administration of the mortgage loan and the property for 2-3 years prior to the default at issue, and even called him at around the time of the Notice of Default at issue. See Greene Supp. Cert., ¶ 4, 6. Weisner held himself out as a representative of the Debtor authorized to act for all issues both financial and otherwise. Id. at ¶ 6. Furthermore, Greene sent substantially all payment invoices under the mortgage and note for 2009 and 2010 to Samuel Weisner, c/o Sound Around, Inc. at the Brooklyn address, and the Debtor responded by making payments. Id. at ¶ 7. Greene also sent (i) five prior default notices to Weisner, all of which resulted in cures of such defaults. Id. at ¶ 8 and (ii) other loan administration letters to Weisner resulting in resolution of the issues identified therein. Id. at ¶ 9.

Greene also communicated with Zigmund Brach, the CEO of Sound Around, who held himself out as a direct or indirect owner of the Debtor and signed the Debtor's checks for the mortgage payments. Id. at ¶ 9-11. Brach advised Greene to communicate with Weisner regarding the default. Id. at ¶ 9. Throughout their history, the Debtor never advised Greene that he should not send notices or communicate through Samuel Weisner at the Brooklyn address. Id. at ¶ 11.

In response to the Greene Family's argument, and case law in support of the argument, that strict compliance with notice provisions is unnecessary when actual knowledge is present, the Debtor simply argues that "these cases are wrongly decided." (See Debtor's Reply Brief, p. 14). Such an argument must fail.

The cases cited by the Greene Family are well reasoned decisions standing for the proposition that technical compliance with notice provisions is unnecessary where there has been

substantial compliance, no prejudice to the mortgagor, and actual knowledge of the default. The case cited by the Debtor, <u>Dale v. Industrial Ceramics, Inc.</u>, 571 N.Y.S.2d 185 (Sup.Ct. N.Y.Co. 1991), is distinguishable in that the case does not address whether there was actual notice. Assuming that the Debtor had actual notice, then the cases cited by the Greene Family should be followed.

## POINT V

## THE GREENE FAMILY IS ENTITLED TO
## POST-PETITION DEFAULT RATE INTEREST

The Debtor argues that because of improper notice of default, the Greene Family is entitled to neither pre-petition nor post-petition interest at the default rate. As argued, *supra*, because there was an event of default not requiring notice, and, further, that there was actual notice, then the Greene Family is entitled to interest at the default rate.

The Debtor further argues, with regard to post-petition interest, that the Greene Family is not entitled to such interest because the Debtor has been current with its adequate protection payments under § 362(d)(3) in an amount consented to by stipulation. The Debtor's argument is inapposite. Adequate protection payments are unrelated to the Greene Family's claim for post-petition default rate interest.

Payments under § 362(d)(3) are not debt service payments. Section 362(d)(3)(B)(ii) provides that the court may grant relief from the stay unless the debtor has commenced monthly payments that "are in an amount *equal* to interest at the then applicable nondefault contract rate of interest..." 11 U.S.C. § 362(d)(3)(B)(ii) (emphasis added). Such payments are not interest payments. See 3 Collier on Bankruptcy 362.07[5] at p. 362-122 (16th Ed. 2015) ("It should be noted that the payments are not necessarily payments of interest, but are in an amount 'equal to' interest at the then applicable nondefault contract rate of interest.")

Furthermore, there is nothing in the Stipulation which precludes the Greene Family from seeking default rate interest through its proof of claim. In fact, the Stipulation specifically provides that "[r]egardless of any...determination of any objection to the claim of the Lender, the Total 362(d)(3) payments shall be allocated to post-petition interest at the applicable non-default contract rate of interest[,]" and, further that "[f]or the purpose of settlement, neither the Debtor,

nor any other party in interest, seek to attribute the Total 362(d)(3) Payments to principal, or any other sums which may be due and owning (sic.) under the applicable Note and Mortgage." (See Doc. No. 82, ¶ 4).  Moreover, ¶ 8 of the Stipulation contains an express preservation of rights, *i.e.*, that "this Stipulation is without prejudice to any motion practice brought by any party in interest on any other issue not covered by this Stipulation." (See Doc. No. 82).

## POINT VI

### THE GREENE FAMILY IS ENTITLED TO
### BOTH PRE-PETITION DEFAULT RATE INTEREST AND LATE CHARGES

The Debtor glosses over the Greene Family's argument that the Greene Family is entitled to both pre-petition default interest and late fees, arguing generally, as it did in its Objection, that the Greene Family is not entitled to both default interest and late charges. As noted in the Greene Family's original opposition brief at Point V.C., the cases cited by the Debtor, (previously, In re 785 Partners LLC, 470 B.R. 126 (Bankr. S.D.N.Y. 2012) and now adding In re Vest Associates, 217 B.R. 696 (Bankr. S.D.N.Y. 1998), a case previously cited by the Greene Family), both address an oversecured mortgagee's entitlement to *post-petition* default interest and late fees. As argued in Point V.C. of the Greene Family's original opposition brief, a claim for *pre-petition* default interest in addition to late fees must be determined under New York law, and New York courts routinely allow both.

## POINT VII

## THE GREENE FAMILY IS ENTITLED TO LEGAL FEES

As noted in the Greene Family's initial opposition brief, it is unclear as to whether the Debtor is arguing that the Greene Family is not entitled to pre-petition legal fees, although the Debtor does argue that the pre-petition legal fees claimed by the Greene Family are "based entirely on the unconfirmed Referee's report, without any supporting documentation whatsoever." (See Debtor's Reply Brief, Point III.B.4., p. 18). While unconfirmed, the Referee based his award upon extensive documentation and testimony, and there is no reason for this Court to question those calculations or their reasonableness. The fact that the Debtor was offered an opportunity to testify and present evidence and declined to do so also bears emphasis.

As for post-petition fees, the Debtor argues that the documentation submitted by the Greene Family is deficient, noting that the time logs submitted have been redacted. Admittedly, the time logs have been redacted on the basis of attorney-client privilege. As indicated in the Greene Family's initial objection brief, the determination of the amount of the Greene Family's post-petition legal fees should be made at a future hearing. At that time, the Greene Family will make its records available for (i) an *in camera* review by the Court or (ii) inspection subject to an appropriate protective order which preserves any privilege.

## POINT VIII

## THE SONNAX FACTORS FAVOR STAY RELIEF

While the Greene Family maintains that the issues the Debtor seeks to revisit in connection with the Claim Objection have already been determined by the state court and that such determinations must be adopted by this Court, the Debtor insists that such determinations cannot be given preclusive effect based upon the state court's failure to confirm the Referee's Report. In the event that this Court agrees with the Debtor, then stay relief must be granted in order to allow the simple confirmation of the Referee's Report.

The Debtor first erroneously argues that by entering into the Stipulation, the Greene Family has consented to this Court's jurisdiction to determine issues regarding entitlement to default rate interest, late charges and legal fees. The Stipulation grants no such consent, as such issues were not addressed in the prior motion for stay relief and the Stipulation does not grant permission to the Bankruptcy Court to decide state court issues. Moreover, as noted in Point V, *supra*, ¶ 8 of the Stipulation expressly provides that "this Stipulation is without prejudice to any motion practice brought by any party in interest on any other issue not covered by this Stipulation." (See Doc. No. 82). Because the Stipulation does not contain any consent to the jurisdiction of this Court to determine the amount of the Greene Family secured claim, the Greene Family's right to seek stay relief to confirm the Referee's Report is preserved.

The Debtor argues that the factors enunciated in In re Sonnax Industries, Inc., 907 F.2d 1280, 1286 (2d cir. 1990) favor denial of stay relief. The Debtor's conclusion is incorrect. The Sonnax factors are either inapplicable, or favor granting stay relief for the limited purpose of allowing confirmation of the Referee's Report.

23

Without any support, the Debtor claims that granting stay relief will result in delay in the confirmation process and harm to creditors. The Debtor does not explain how allowing the Greene Family to seek confirmation of the Referee's Report in state court will be a lengthy process or interfere with Plan confirmation. In fact, as more fully explained in Point VIII.D., *infra*, it could expedite the fixing of the Greene Family's claim instead of imposing upon the Bankruptcy Court the task of calculating damages and entertaining further arguments as to the reasonableness of pre-petition legal fees in fixing the Greene Family's pre-petition claim.

A.    **Sonnax Factor 1 (Resolution of the Issues) Favors Stay Relief**

As for the first <u>Sonnax</u> factor, the Debtor argues that granting relief will not result in complete resolution of the issues, only the pre-petition claim. The Debtor is correct that this Court must determine the amount of the Greene Family's post-petition claim. This Court's task, however, will be made much easier if it does not also have to determine the pre-petition claim, which can be fully resolved in state court.

The Debtor also misleadingly states that the state court confirmation process will be lengthy, as its challenge to the Referee's Report had not yet been fully briefed. Contrary to the Debtor's implication, the confirmation process would not be complicated or involve a challenge on legal issues. Rather, as argued in Point I, *supra*, the only province of the Referee was to perform calculations, and the only basis for any challenge to the Referee's Report would be the accuracy of those calculations. Accordingly, the confirmation of the Referee's Report in state court would not be lengthy or complicated, but relatively simple. In contrast, the Debtor asks this Court to re-examine legal issues previously determined by the state court and to perform mathematical calculations already performed by the Referee.

**B.    Sonnax Factor 2 (Lack of Interference with the Bankruptcy Case) Favors Stay Relief**

While the Claim Objection is, of course, related to the bankruptcy proceeding, the determination of the debt owed to the Greene Family involves substantive state issues more appropriately resolved in state court. Allowing the state court to make such determinations will not interfere with the bankruptcy court case, as the confirmation of the Referee's Report in state court can be handled expeditiously, as argued in Point VIII.D., *infra*.

**C.    Sonnax Factor 4 (Expertise of the State Court) Favors Stay Relief**

As argued throughout these proceedings, the state court is the more appropriate forum to make determinations which involve the application of New York state law. While this Court is capable of applying New York law to the issues involved such as the applicability of default rate interest and the allowance of both default interest and late charges, such matters are routinely decided by the state court.

**D.    Sonnax Factors 7 (No Prejudice to Other Creditors), 10 (Judicial Economy) and 11 (Readiness for Resolution of the Issues in State Court) Favor Stay Relief**

The Debtor argues that Sonnax Factor 7, prejudice to other creditors, weighs against granting stay relief. The Debtor relies on the mistaken presumption that this Court can fix the Greene Family's claim more expeditiously than the state court. This argument is similar to that relied upon by the Debtor in addressing Sonnax Factor 10, judicial economy. Finally, Factor 11, the parties' readiness for trial, is a related factor weighing in favor of granting stay relief.

As argued by the Greene Family throughout its Opposition and within Sur-Reply, there is very little involved in confirmation of the Referee's Report. The only issue which may be addressed or challenged upon confirmation is the accuracy of the Referee's calculations. Contrary to the Debtor's unsupported contentions that the bankruptcy court is the more

appropriate forum for resolution of the issues involved, the state court is, in fact, the more appropriate forum. While the state court will simply examine the Referee's computations for accuracy, the Debtor is asking this Court to reexamine a slew of other legal issues in addition to performing calculations already performed by the Referee. This Court's determination of such issues would also necessarily involve the taking of testimony to assess the credibility of witnesses, resulting in further delay.

Pursuant to CPLR 2214(b), a motion in New York state court need only be filed and served eight days prior to the hearing date. In addition, the state court judge assigned to the Debtor's foreclosure matter, Judge Elaine Slobod, allows the scheduling of hearings any day at 9:15 a.m. Although the Debtor argues that the issues have not been briefed in the state court, such issues would need to be briefed within eight days (with the Debtor's answering affidavits due two days prior to the hearing date). Accordingly, once stay relief is granted, the Greene Family's motion to confirm the Referee's Report could be heard and decided within a very short period of time, and without any adverse effect on the confirmation process or other creditors.

**E.**    **Sonnax Factor 12 (Balance of Harms) Favors Stay Relief**

In arguing that the balance of harms favors denial of stay relief, the Debtor again emphasizes the prejudice to other creditors resulting from alleged extensive delay attendant to granting stay relief in contrast to the lack of harm to the Greene Family. The Debtor also argues that granting relief from the stay will not result in a final determination of amount due.

Again, while this Court must determine the post-petition amount due, the pre-petition amount due has already been determined by the Referee and can be expeditiously confirmed (or not confirmed) by the state court within approximately eight days. In contrast, the Debtor asks

this Court to re-examine legal issues and re-perform calculations, which could take a significant amount of time for this Court to decide.

Furthermore, granting stay relief does not result in harm to any party. In fact, the risk of inconsistent results between the bankruptcy court and the state court could harm the entire process. Weighing all of the factors here favors stay relief.

**F.    Sonnax Factors 3 (Whether the Debtor is a Fiduciary), 5 (No Insurance), 6 (No Involvement of Third Parties), 8 (No Claim for Equitable Subordination) and 9 (Avoidance of Liens) Are All Inapplicable**

Sonnax Factors 3, 5, 6, 8 and 9, are all inapplicable here. As such, they do not weigh either in favor or against granting stay relief.

**G.    Aside From Sonnax, Other Case Law Supports Granting Stay Relief**

As recognized in In re Robbins, 964 F.2d 342 (4th Cir. 1992) and Matter of Holtkamp, 669 F.2d 505 (7th Cir. 1982), the legislative history of § 362 evidences Congress's clear intent that the stay should be lifted in appropriate circumstances, allowing "'proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.'" 964 F.2d at 345; 669 F.2d at 508 (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 50 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787).

Again, the parties here chose the state court to litigate the foreclosure action, a forum which has the expertise to handle such matters, and which, in fact, litigated such matter almost to conclusion, resolving the issues the Debtor seeks this Court to re-examine. While the Debtor accuses the Greene Family of forum shopping, it is clearly the Debtor which is forum shopping. Not only is there no harm to the bankruptcy estate in allowing the Referee's Report to be confirmed in state court, but such allowance relieves this Court of a great burden.

## **CONCLUSION**

Based on the above, as well as the Greene Family's previous Opposition, the Bankruptcy Court should:  1) deny the Objection in its entirety, or in the alternative, grant the Greene Family stay relief to seek confirmation of the Referee's Report; and 2) grant the Greene Family's Cross-Motion for post-petition interest, costs and attorney's fees, as well as any relief the Court deems just.

RABINOWITZ, LUBETKIN & TULLY, LLC

By: _____
　　　Jeffrey A. Cooper

DATED:  October 9, 2015

F:\Client_Files\A-M\Greene, Hal J. Living Trust\Cross-Motion.Sur-reply to Debtor's Reply.Memo of Law.doc

28

# RABINOWITZ, LUBETKIN & TULLY, L.L.C.

### ATTORNEYS AT LAW

JONATHAN I. RABINOWITZ*
JAY L. LUBETKIN△
MARY ELLEN TULLY, RETIRED
BARRY J. ROY*□
JEFFREY A. COOPER*
LAURA E. QUINN*
JOHN J. HARMON*

293 EISENHOWER PARKWAY • SUITE 100
LIVINGSTON, NEW JERSEY 07039
TELEPHONE: (973) 597-9100
FACSIMILE: (973) 597-9119
WWW.RLTLAWFIRM.COM

\* MEMBER NJ & NY BARS
△ MEMBER NJ & GA BARS
□ MEMBER MA BAR

August 6, 2015

Via ECF
Honorable Nancy H. Lord
United States Bankruptcy Court, EDNY
271-C Cadman Plaza East, Suite 1595
Brooklyn, NY 11201-1800

        **Re:**   **Keen Equities, LLC**
               **Case No. 13-46782 (NHL)**
               **Report to Court as to Parties' Consensual Briefing Schedule**
               **Motion and Cross-Motion Now Returnable:**
               **October 22, 2015 at 10:30 a.m.**

Dear Judge Lord:

        Pursuant to e-mail communications with Debtor's counsel and the Court, I write to advise the Court that given the rescheduling of the Motion, Cross-Motion, and status conference for October 22, 2015 at 10:30 a.m., the parties have agreed to a consensual briefing schedule in which the Debtor will file its papers by September 4, 2015 and the Greene Family will file their papers by October 9, 2015.

        The hearing on the Motion and Cross-Motion and status conference are now scheduled for Thursday, October 22, 2015 at 10:30 a.m.

                               Respectfully submitted,

                               RABINOWITZ, LUBETKIN & TULLY, L.L.C.

                               Jeffrey A. Cooper

JLL:rg
cc:   J Ted Donovan, Esq. (via e-mail tdonovan@gwfglaw.com)

F:\Client_Files\A-M\Greene, Hal J. Living Trust\Judge Lord-3.doc